[Civ. No. 8939.   Third Dist.   Mar. 20, 1956.]

CLAIR ENGLE, Petitioner, v. SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent; HAZEL ENGLE, Real Party in Interest.

Edmund M. Moor, Daniel S. Carlton and Robert A. Haughwout for Petitioner.

No appearance for Respondent.

Blewett, Blewett, Macey & Garretson and Blewett, Blewett & Garretson for Real Party in Interest.

SCHOTTKY, J.—Petitioner seeks a writ of prohibition to restrain the Superior Court of San Joaquin County from taking any further proceedings in an action entitled *Hazel Engle* v. *Clair Engle* until the final determination of a modification proceeding now pending between the same parties in the Circuit Court of the Sixth Judicial Circuit of the State of Florida. This court issued an alternative writ and stay order.

It appears from the record that petitioner Clair Engle and Hazel Engle were married in California in 1933. In 1947 Hazel Engle filed an action for divorce against petitioner in the State of Florida and a decree of divorce was entered on October 2, 1947, which decree included the following order: "It is further ordered, adjudged, and decreed that the agreement entered into by and between the parties hereto, introduced into evidence as Plaintiff's Exhibit #2, be, and the same is hereby ratified, approved and confirmed by the Court, attached hereto and made a part hereof."

The agreement which was executed on August 12, 1947, prior to the filing of the complaint for divorce, provided for

a monthly payment of $300 a month until the minor child of the marriage should reach her majority, at which time the payment would be modified to some mutually agreeable amount. Said agreement provided further that ''In the event the parties cannot mutually agree upon the amount to be paid for the support and maintenance of said Wife, then, the Wife shall be entitled to prosecute any legal remedies open to her for that purpose only.''

The parties further provided that in the event of divorce ''this agreement may be made a part of said decree whether incorporated therein or adopted by reference.'' A copy of the agreement is on file with the Florida court which granted the decree.

In 1951 Hazel Engle returned to California and established residence. In 1954, after the minor child reached her majority, Clair Engle reduced the payment to $100 per month. Thereafter Hazel Engle filed suit in the Superior Court of San Joaquin County praying that the court award her a fair and reasonable amount for her care and support. Her amended complaint alleged the making of said agreement and that it had never been revoked. It also alleged the granting of the decree of divorce in Florida and the reduction by petitioner of the support payments to her from $300 per month to $100 per month upon the minor child's reaching the age of majority. The said complaint alleged further that the sum of $100 per month was wholly insufficient for her support, that petitioner's salary as Congressman had increased and that petitioner was well able to pay the sum of $500 per month for her care, support, needs and medical attention.

Petitioner moved the respondent superior court to dismiss said action upon the stated ground that said court had no jurisdiction over the subject of said action and had no power or authority to modify the term of the property settlement agreement referred to in said amended complaint. Petitioner at the same time filed a demurrer to said amended complaint upon the grounds that respondent court had no jurisdiction over the subject of the action and that said complaint failed to state a cause of action. Respondent court denied petitioner's motion to dismiss and overruled his demurrer to the amended complaint. Thereafter, on July 8, 1955, petitioner sought modification of the support decree in the Florida court which granted the decree. After taking this step, peti-

tioner again sought dismissal on the ground of lack of jurisdiction, or, in the alternative, a stay of proceedings until the Florida court determined the modification proceedings pending before it. This was denied and petitioner then applied to this court for a writ of prohibition and in the alternative a writ of mandate.

Petitioner's first contention is that the agreement was merged in the Florida decree and no independent action remains thereon.

The agreement upon which the complaint is based was entered into before the divorce action was commenced. It provided for the payment of $300 per month for the support of the wife and minor child until the child should reach the age of majority, at which time the amount would be reduced to some mutually agreeable amount. It then went on to provide that if the parties could not agree then "the wife shall be entitled to prosecute any legal remedies open to her." The agreement further provided that in the event of a divorce "this agreement may be made part of said decree." The divorce was granted and the decree provided that the "agreement is ratified, approved and confirmed."

Petitioner argues that the agreement was merged in the decree and that no cause of action can be brought on the agreement. ■■■ We think that in the instant proceeding it makes little difference whether the agreement was or was not merged in the decree because the right which the wife is here seeking to enforce does not involve a modification of the decree but it is a right given to her by the agreement which was ratified and approved by the decree. It is to be noted that the decree, after ratifying and approving the agreement, provided that it retained jurisdiction for further order pertaining to the custody and support of the minor child but there is nothing in the decree which takes away the right given to the wife "to prosecute any legal remedies open to her" when, after the minor child should reach the age of majority, the parties were unable to agree.

But even if we assume that, as argued by petitioner, the agreement was merged in the Florida decree, we are unable to agree with petitioner's contention that the courts of California have no jurisdiction in the instant action commenced by the wife, for all that the wife is here seeking to do is enforce the right given to her by the contract. The Florida court in its decree did not order petitioner to make any payments to the wife, but merely approved the agreement. While the decree

stated that the court retained jurisdiction to make further orders as to the custody of the minor child, there was nothing in the decree which prevented the wife from prosecuting any legal remedies open to her under the contract after the minor child reached the age of majority.

Petitioner contends that only the Florida court can determine the question as to what amount the wife is now entitled to receive under the agreement and decree, the minor child having reached the age of majority.

Petitioner states that property settlement agreements and their construction and effect must be interpreted in the light of the law of the state in which they are executed. He quotes the following from *Hutchinson* v. *Hutchinson*, 48 Cal.App.2d 12, at page 18 [119 P.2d 214] :

"Upon this record the first question for determination is whether the law of California or the law of Illinois is here applicable. It is well established that the legality of a contract is to be determined by the law of the place where it was made, and its interpretation likewise. (Civ. Code, § 1646; Rest., Conflict of Laws, § 347.) If the contract is legal in the state where it was made it will be enforced in another state unless the contract is contrary to the strong public policy of the forum. (Rest., Conflict of Laws, § 612.)"

Petitioner then states that the Florida law provided that the jurisdiction of the Florida circuit courts, for the purpose of modifying Florida divorce decree and property settlement agreements for such modification purposes, is to be exclusive, and quotes from section 65.15, F.S.A., as follows:

". . . and it shall be unlawful to commence, or cause to be commenced as party, attorney, or agent, or otherwise, in behalf of either party in any court any action or proceeding otherwise than as herein provided, nor shall any court have jurisdiction to entertain any action or proceeding otherwise than as herein provided to enforce the recovery of separate support, maintenance or alimony otherwise than pursuant to such order or judgment. . . .

"This section is declaratory of existing public policy and laws of this state, which is hereby affirmed and confirmed in conformance with the provisions hereof. . . ."

Even if it be conceded that the only cause of action is on the decree, we do not believe that the jurisdiction of the Florida court is exclusive for the Florida statute purporting to give exclusive jurisdiction in the Florida courts is not

binding upon the California courts. Section 617 of Restatement of Conflict of Laws states:

"An action can be maintained on a foreign cause of action although by the law of the state which created the right, it is required that suit shall not be brought outside the state."

That this is true is clearly indicated by the decision of the United States Supreme Court in the case of *Halvey* v. *Halvey,* 330 U. S. 610 [67 S.Ct. 903, 91 L.Ed. 1133], which in some respects bears a striking similarity to the instant case. The Halveys were married in New York in 1937 and lived together in New York until 1944. In 1938 a son was born. Marital troubles developed in 1944. Mrs. Halvey went to Florida and established residence there. In 1945 she instituted a suit for divorce and a decree was granted awarding her custody of the child. The day before the decree was entered Mr. Halvey took the child back to New York without Mrs. Halvey's knowledge or approval. Mrs. Halvey returned to New York and commenced a habeas corpus proceeding in the New York Supreme Court to regain custody of the child. Mr. Halvey, in contesting the proceeding, sought to gain certain visitation rights including the right to keep the child during certain vacation periods, which rights were not given him by the Florida decree. After hearing, the New York court ordered (1) that the custody of the child remain with the mother; (2) that the father have rights of visitation including the right to keep the child with him during stated vacation periods in each year, and (3) that the mother file with the court a surety bond in the sum of $5,000, conditioned on the delivery of the child in Florida for removal by the father to New York for the periods when he had the right to keep the child with him. Mr. Halvey appealed but both the Appellate Division and the Court of Appeals affirmed, and Mr. Halvey carried the case to the United States Supreme Court which granted a writ of certiorari. Although the Florida Statute, section 65.15, was then in force, the Supreme Court rejected the argument that only the courts of Florida had power to modify the divorce decree, and in affirming the order of the trial court said at pages 612, 613, 614, 615:

"The custody decree was not irrevocable and unchangeable; the Florida court had the power to modify it at all times. . . .

". . . Facts which have arisen since the original decree are one basis for modification of the custody decree. *Frazier* v. *Frazier,* 109 Fla. 168 [147 So. 464]; *Jones* v. *Jones,* 156 Fla.

524 [23 So.2d 623, 625]. But the power is not so restricted. It was held in *Meadows* v. *Meadows,* 78 Fla. 576 [83 So. 392, 393], that 'the proper custody of the minor child is a proper subject for consideration by the chancellor at any time, even if facts in issue could have been considered at a previous hearing, *if such facts were not presented or considered at a former hearing.'* (Italics added.) Or, as stated in *Frazier* v. *Frazier,* 109 Fla. 168 [147 So. 464], a custody decree 'is not to be materially amended or changed afterward, unless on altered conditions shown to have arisen since the decree, or because of material facts bearing on the question of custody and existing at the time of the decree, but which were unknown to the Court and then only for the welfare of the child.' The result is that custody decrees of Florida courts are ordinarily not res judicata either in Florida or elsewhere, except as to the facts before the court at the time of judgment. *Minick* v. *Minick,* 111 Fla. 469, 490, 491 [149 So. 483, 492].

. . . . . . . . . . .

"`. . . It seems to us plain, therefore, that under the rule of *Meadows* v. *Meadows,* 78 Fla. 576 [83 So. 392], *supra,* the Florida court would have been empowered to modify the decree in the interests of the child and to grant respondent the right of visitation, if he had applied to it rather than to the New York court and had presented his version of the controversy for the first time in his application for modification.

"So far as the Full Faith and Credit Clause is concerned, what Florida could do in modifying the decree, New York may do. . . .

"The general rule is that this command requires the judgment of a sister State to be given full, not partial, credit in the State of the forum. See *Davis* v. *Davis,* 305 U. S. 32 [59 S.Ct. 3, 83 L.Ed. 26, 118 A.L.R. 1518]; *Williams* v. *North Carolina,* 317 U. S. 287 [63 S.Ct. 207, 87 L.Ed. 279, 143 A.L.R. 1273]. But a judgment has no constitutional claim to a more conclusive or final effect in the State of the forum than it has in the State where rendered. . . .

. . . . . . . . . . .

"In this case the New York court, having the child and both parents before it, had a full hearing and determined that the welfare of the child and the interests of the father warranted a modification of the custody decree. It is not shown that the New York court in modifying the Florida decree

exceeded the limits permitted under Florida law. There is therefore a failure of proof that the Florida decree received less credit in New York than it had in Florida."

Our own Supreme Court in the recent case of *Worthley* v. *Worthley*, 44 Cal.2d 465 [283 P.2d 19], in rejecting the contention of defendant husband that his obligations under a New Jersey divorce decree were not enforceable in California, said at pages 468-474:

". . . Since the New Jersey decree is both prospectively and retroactively modifiable (N.J.S. § 2A: 34-23 [1951]), we are not constitutionally bound to enforce defendant's obligations under it. (*Sistare* v. *Sistare*, 218 U. S. 1 [30 S.Ct. 682, 54 L.Ed. 905, 28 L.R.A.N.S. 1068]; *Lynde* v. *Lynde*, 181 U. S. 183 [21 S.Ct. 555, 45 L.Ed. 810]; *Barber* v. *Barber*, 21 How. (U.S.) 582 [16 L.Ed. 226].) Nor are we bound *not* to enforce them. (*Halvey* v. *Halvey*, 330 U. S. 610, 615 [67 S.Ct. 903, 91 L.Ed. 1133]; *Cummings* v. *Cummings*, 97 Cal.App. 144, 151 [275 P. 245].) The United States Supreme Court has held, however, that if such obligations are enforced in this state, at least as to accrued arrearages, due process requires that the defendant be afforded an opportunity to litigate the question of modification. (*Griffin* v. *Griffin*, 327 U. S. 220, 233-234 [66 S.Ct. 556, 90 L.Ed. 635]; see also *Gough* v. *Gough*, 101 Cal.App.2d 262, 267-268 [225 P.2d 668].) It has also clearly indicated that as to either prospective or retroactive enforcement of such obligations, this state 'has at least as much leeway to disregard the judgment, to qualify it, or to depart from it as does the State where it was rendered.' (*Halvey* v. *Halvey*, supra, 330 U. S. 610, 615.)

. . . . . . . . . . . . .

". . . It was stated in the Biewend case, however, that the Missouri decree would be established as a decree of the California courts 'until such time as the Missouri court modifies its decree.' (17 Cal.2d 108, 114.) On reconsideration we have concluded, for reasons that appear below, that this statement was erroneous insofar as it implied that the California courts will not try the issue of modification on its merits, and that the courts of this state should undertake to try such issues.

"The District Court of Appeal for the Third Appellate District in a recent case has prospectively modified a support obligation created in a Nevada decree. (*Starr* v. *Starr, supra,* 121 Cal.App.2d 633 [263 P.2d 675].) In that case the plaintiff-wife obtained a divorce in Nevada in 1949, at which time

she was awarded custody of her minor child and the defendant husband was ordered to contribute $25 per month toward the support of the child. Subsequently the wife and child became residents of California, and in 1951 she brought an action asking that the husband's support payments be increased to $75 per month. In affirming the trial court's order increasing the husband's obligation to $75 per month, the District Court of Appeal drew an analogy to *Sampsell* v. *Superior Court,* 32 Cal.2d 763 [197 P.2d 739], in which it was held that custody rights established in one state were modifiable in any other state that had jurisdiction over the subject matter. The court concluded that if the California courts could modify the custody rights created in the Nevada decree, there was no reason why the support obligation created in the same decree could not also be modified. Similarly, the courts of a number of other states have affirmed their willingness to undertake prospective modification of alimony and support obligations created in sister-state decrees. [Citing cases.]

"Although the question of retroactive modification has been seldom litigated, the United States Supreme Court has expressed its approval of the proposition that actions to enforce retroactively modifiable decrees should be tried in a forum that has personal jurisdiction over both parties, and that in the trial of such actions the defendant must be afforded an opportunity to set up any mitigating defenses that would be available to him if the suit were brought in the state where the alimony or support decree was originally rendered. (*Griffin* v. *Griffin,* 327 U. S. 220, 233-234 [66 S.Ct. 556, 90 L.Ed. 635] ; see also *Gough* v. *Gough,* 101 Cal.App.2d 262, 267-268 [225 P.2d 668].) . . .

"It is suggested that even if there are no binding California authorities on the question, we should follow certain sister-state decisions holding that alimony and support obligations created by a prospectively and retroactively modifiable decree are enforceable only in the state in which the decree was rendered. The policy implicit in those decisions is that a modifiable duty of support in one state 'is of no special interest to other states and . . . is not enforceable elsewhere under principles of Conflict of Laws.' (Rest., Conflict of Laws, § 458, com. *a.*) This policy was rejected by this court in the Biewend case (see also *Hiner* v. *Hiner,* 153 Cal. 254, 257 [94 P. 1044]) and by the Legislature of this state in enacting the Uniform Reciprocal Enforcement of Support

Act. (Code Civ. Proc., §§ 1650-1690.) In proceedings commenced pursuant to the provisions of that act, the California courts must recognize and enforce foreign alimony and support decrees whether modifiable or not (Code Civ. Proc., § 1670), and must afford the defendant an opportunity to litigate the issue of modification. (Code Civ. Proc., § 1682; *Griffin* v. *Griffin, supra,* 327 U. S. 220, 233-234.) If we should now refuse to follow the policy expressed by the Legislature in the Uniform Act, and by this court and the United States Supreme Court in the Sampsell and Griffin cases, and should hold that even though the courts of this state have personal jurisdiction over the defendant, his obligations under a prospectively and retroactively modifiable sister-state support decree cannot be enforced in this state, the result would be anomalous. There would then be two rules in California, one for proceedings commenced under the Uniform Act, and a contrary one for all other proceedings to enforce foreign created alimony and support obligations.

"Moreover, there is no valid reason, in a case in which both parties are before the court, why the California courts should refuse to hear a plaintiff's prayer for enforcement of a modifiable sister-state decree and the defendant's plea for modification of his obligations thereunder. . . .

"Furthermore, there is no merit to the contention that as a matter of practical convenience the issue of modification should be tried in the courts of the state where the support decree was originally rendered. Proof of changed circumstances in support cases is no more difficult than in custody cases and, as noted above, a California court that has jurisdiction of the subject matter must undertake to adjudicate a plea for modification of custody rights established by a sister-state decree."

In the still more recent case of *Hopkins* v. *Hopkins,* 46 Cal.2d 313 [294 P.2d 1], a wife brought an action in California to collect arrearage claimed to be due under a 1927 Colorado decree of divorce, which incorporated a property settlement agreement providing that defendant should pay to plaintiff "in lieu of all payments of alimony and support money, and by way of support and maintenance for the first party [plaintiff] and their said minor children, the sum of One Hundred Fifty Dollars ($150) per month . . ." in addition to certain lump-sum payments that were to be made within three years from the date of the decree of divorce. The property settlement agreement also provided that "If the

first party hereto [plaintiff] shall at any time remarry, such re-marriage on the part of the party of the first part shall relieve second party [defendant] from the payment of any further alimony to the first party. But such marriage, if any such takes place, shall not relieve the party of the second part from the payment to the first party of such proportionate part of the monthly payments hereinbefore provided for as shall be reasonably necessary for the support, maintenance, and education of their said children as long as said children or any of them remains a minor and in the custody of the first party." Defendant husband contended that the California courts were " 'without power' to determine the proportion of the total support obligation attributable to plaintiff, and thus that defendant's obligation cannot be enforced in California until plaintiff obtains a determination by a Colorado court of the proportion of the total support obligation attributable to her." The trial court held that the Colorado "Judgment and Decree sought to be sued upon is too uncertain to be sued on and is unenforceable in California."

In reversing the lower court, the Supreme Court said at page 316 [294 P.2d 1]:

". . . In the Worthley case this court rejected the contention that a prospectively and retroactively modifiable sister-state support decree is too uncertain to form the basis of an action in this state for a money judgment, and we held 'that foreign-created alimony and support obligations are enforceable in this state. In an action to enforce a modifiable support obligation, either party may tender and litigate any plea for modification that could be presented to the courts of the state where the alimony or support decree was originally rendered.' (44 Cal.2d at 474 [283 P.2d 19].)

"Plaintiff's contractual right to receive her proportionate share of the $150 monthly payment under the Colorado decree is not subject to modification by this or any other court (*Zlaten* v. *Zlaten*, 117 Colo. 296, 298-299 [186 P.2d 583]; *Hall* v. *Hall*, 105 Colo. 227, 235-239 [97 P.2d 415]; cf. *Dexter* v. *Dexter*, 42 Cal.2d 36, 40 [265 P.2d 873]), and the crucial question presented to the trial court in the present case was to resolve the ambiguity latent in the property settlement agreement by determining the proportion of defendant's obligation attributable to plaintiff. (See *Meek* v. *Meek*, 51 Cal. App.2d 492, 495 [125 P.2d 117]; *Putnam* v. *Putnam*, 51 Cal.App.2d 696, 699 [125 P.2d 525].) . . . The trial court

should have made a finding on the basis of that evidence and entered judgment accordingly.''

Petitioner's final contention is that ''Respondent court abused its discretion in failing to stay, as a matter of comity, further proceedings in that court until a final determination of the identical issue in the Florida modification proceeding.''

Petitioner argues that if this court should hold that respondent court is not proceeding in excess of its jurisdiction, then as an alternative form of relief a writ of mandate should issue ordering said court to stay proceedings as a matter of comity until the modification proceeding in Florida (which was filed by petitioner after the wife commenced her action in the respondent court) is finally determined.

Petitioner contends that the respondent court abused its discretion in not staying the instant proceeding and cites the case of *Simmons* v. *Superior Court,* 96 Cal.App.2d 119 [214 P.2d 844, 19 A.L.R.2d 288]. The facts of that case are quite different from those in the instant case. Mr. and Mrs. Simmons were both residents of Texas and Mrs. Simmons commenced an action for divorce in Texas. Mr. Simmons took possession of some stock certificates and came to Los Angeles and there filed an action against Mrs. Simmons in which he claimed ownership of the stock. After various proceedings in both actions Mrs. Simmons moved the Superior Court in Los Angeles County to stay all proceedings in California until the final determination of the Texas action. Her motion was denied and she sought a writ of prohibition to restrain the California court from proceeding until the Texas action was determined. The court in granting the writ said at page 131:

''The parties are residents of Texas. The Texas action will determine all the issues involved in the California action. The courts of Texas are as competent to administer justice as those of California. A trial in Texas under the circumstances is more likely to accomplish full justice than a trial in California of the comparatively narrow issues involved in the action here. The remedy which may be afforded by the Texas courts is equally as effective and advantageous as any that may be afforded by the California courts. Only confusion, inconvenience, and possible defeat of the rights of the wife can result from trying the California action. Further proceedings in California should be stayed where it appears, as it does in the present case, that complete justice cannot be done here, that the wife will be subjected to great and unnecessary inconvenience and expense, and that the trial,

if conducted here, will be attended with many, if not insuperable, difficulties. All of this can be avoided with no hardship to the husband if the Texas action, commenced prior to the California action in the jurisdiction where the parties reside, in which the issues can be more easily and effectively tried, and in which complete justice can be done, is first heard and determined.

"Since the Texas court first assumed and exercised jurisdiction and the parties are residents of that state, comity and the expediency and the practical desirability of avoiding a multiplicity of forms necessitate the holding that respondent court abused its discretion in not staying further proceedings until the final determination of the Texas action. Decent respect for Texas and its courts demands that respondent court wait until the Texas courts have spoken."

It is at once apparent that *Simmons* v. *Superior Court* does not support petitioner's contentions. In that case both parties were residents of Texas and Mrs. Simmons' action was filed first.  In the instant case both parties are residents of California and the wife's action in California was filed eight months before petitioner filed his petition for modification in the Florida action. California has a greater interest in the matter than has Florida because if the wife were to become a public charge California would have to provide for her welfare. While comity is entitled to great consideration, it is unthinkable that considerations of comity should compel either the wife or petitioner to journey across the continent to Florida for the determination of a matter which under all the circumstances can be better determined in the California courts, for all of the reasons mentioned in the above quotation from *Simmons* v. *Superior Court*.

In view of the foregoing we conclude that the respondent superior court correctly refused to dismiss the instant action or to stay it until the Florida court has determined the modification proceedings filed in that court by petitioner after the commencement of the instant action.

The petition for a writ of prohibition, or, in the alternative a writ of mandate, is denied, and the alternative writ heretofore issued by this court is discharged.

Van Dyke, P. J., and Peek, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied May 15, 1956. Carter, J., was of the opinion that the application should be granted.