CYNTHIA H. YODER *v.* JOHN R. YODER

SUPERIOR COURT      FAIRFIELD COUNTY      FILE NO. 142385
AT BRIDGEPORT

Memorandum filed March 4, 1974

*Lepofsky & Lepofsky,* of Norwalk, for the plaintiff.

*Arnold J. Bai,* of Bridgeport, for the defendant.

SADEN, J. This is an action instituted by the defendant's former wife individually and as parent and natural guardian of Martha Yoder, one of their minor children. In the interest of clarity, the parties will be referred to as "husband" and "wife."

In 1968 the couple obtained a Mexican divorce in which both parties appeared and fully participated. The validity of that divorce is not contested here. An agreement concerning the respective rights and duties regarding support and property was entered into shortly before the divorce and was made a part of the Mexican decree. That agreement provided in pertinent part that the husband would pay the medical expenses of his two minor children, Martha and Elizabeth, and educational

expenses if they attend college. The wife alleges that Martha must attend a boarding school pursuant to doctor's orders. The expense of this school, she contends, is a medical one, properly payable by the husband, and not an educational one for which the husband would not be responsible.

In a motion dated October 26, 1972, the wife sought permission to amend her complaint by adding to the prayers for relief the following: " 'E.' That the decree of divorce entered by the Republic of Mexico be made a decree of this Court and enforced in the same manner as a final decree of this Court." The husband objected to this amendment on the ground, inter alia, that there was no authority for allowing such relief in our courts. The court nonetheless allowed the amendment. The husband now demurs to this prayer for relief, contending that, while our courts may recognize an alien decree, they cannot enforce it by making it a decree of the recognizing court. In order to make an alien decree a decree of this court, it is contended, there must be some statutory authority, which does not exist in Connecticut although it does in other states. See *Herczog* v. *Herczog,* 186 Cal. App. 2d 318, 323.

The question has never been squarely presented to our Supreme Court. This court is of the opinion that the reasoning in *Gagnon* v. *Gagnon,* 23 Conn. Sup. 368, is correct. Absent some statutory authorization, a decree of an out-of-state tribunal cannot be made that of a Connecticut court. Such a conclusion does not, however, bar the operation of the doctrine of comity.

Whether and to what extent American courts should recognize and enforce decrees of other nations has been a subject of voluminous concern to the commentators. See, e.g., Yntema, "The Enforcement of Foreign Judgments in Anglo-

American Law," 33 Mich. L. Rev. 1129; Peterson, "Foreign Country Judgments and the Second Restatement of Conflict of Laws," 72 Colum. L. Rev. 220; Baade, "Marriage and Divorce in American Conflicts Law: Governmental-Interests Analysis and the Restatement (Second)," 72 Colum. L. Rev. 329; von Mehren & Trautman, "Recognition of Foreign Adjudications: A Survey and a Suggested Approach," 81 Harv. L. Rev. 1601.

Over the years, the approach of the Restatement (Second) of Conflict of Laws appears to have prevailed. The Restatement's view is expressed in §§ 98 and 102. Section 98 provides: "A valid judgment rendered in a foreign nation after a fair trial in a contested proceeding will be recognized in the United States so far as the immediate parties and the underlying cause of action are concerned." Comment c to that section cites *Hilton* v. *Guyot,* 159 U.S. 113, from which comes the most often quoted list of requirements for "comity." The court said (p. 202) that "where there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect, the merits of the case should not, in an action brought in this country upon the judgment, be tried afresh, as on a new trial or an appeal, upon the mere assertion of the party that the judgment was erroneous in law or in fact."

This rule is entirely sensible and has many policy considerations to recommend it. The commentators agree on several: (1) a desire to avoid the duplication of effort and consequent waste involved in reconsidering a matter which has been fully litigated; (2) a desire to protect the successful litigant from harassment or evasion by the other party; (3) a policy against making the availability of local enforcement the decisive element in the plaintiff's choice of forum; and (4) an interest in fostering stability and unity in an international society in which many aspects of life are multinational. See von Mehren & Trautman, supra, p. 1603–4.

As the decree rendered by the Republic of Mexico in the instant case appears to meet the requirements set down in *Hilton* v. *Guyot,* supra, it should be recognized in this state.

As to enforcement of that decree, § 102, comment g, of the Restatement (Second) of Conflict of Laws says: "It can therefore be assumed that a decree rendered in a foreign nation which orders or enjoins the doing of an act will be enforced in this country provided that such enforcement is necessary to effectuate the decree and will not impose an undue burden upon the American court and provided further that in the view of the American court the decree is consistent with fundamental principles of justice and of good morals." In other words, an internationally foreign decree will be accorded treatment similar to a judgment of one of our sister states, unless it is found to be repugnant to some basic public policy of the state.

No such repugnancy is found here. The divorce in the instant case was granted on grounds which, at the time of the rendition of the decree, would not have been considered proper under the Con-

necticut statute; that is, incompatibility of temperaments. Today, however, is the point in time from which we should evaluate the state's public policy regarding permissible grounds for divorce. Since the passage of Public Act 73-373, these grounds have included the irretrievable breakdown of the marriage. The grounds on which the Mexican divorce was granted do not differ so greatly from our current divorce law as to be considered repugnant.

There has been no claim made here that the Mexican court lacked jurisdiction to enter the decree. Some writers argue, however, that the state of the domicil of the parties has a paramount public interest in the status of the marriage and should refuse to recognize Mexican divorces or to enforce them since they are all too often procured on a divorce-mill basis. See Baade, supra. The court in *Rosenstiel* v. *Rosenstiel*, 16 N.Y.2d 64, 73, remarked on that point: "The State or country of true domicile has the closest real public interest in a marriage but, where a New York spouse goes elsewhere to establish a synthetic domicile to meet technical acceptance of a matrimonial suit, our public interest is not affected differently by a formality of one day than by a formality of six weeks. Nevada gets no closer to the real public concern with the marriage than Chihuahua."

At present, of course, the Connecticut court's real concern is the best interests of the child. Apparently there is some medical problem, and the plaintiff mother seeks to have the court determine if the Mexican decree provides coverage for such treatment as the mother alleges is necessary, even though it involves special schooling not mentioned in the decree. This question, however, is beyond the scope of this memorandum.

In an analogous case, *Adamsen* v. *Adamsen,* 151 Conn. 172, custody of a child was awarded to the plaintiff as part of a Norwegian divorce decree. The defendant absconded from Norway to Connecticut with the child while an appeal was pending. The plaintiff, in a habeas corpus hearing, sought to have the Norwegian decree enforced here. The court said (p. 178): "The determination of the ultimate question as to the person in whom the custody should be reposed requires the court to exercise its discretion and to give paramount consideration to the welfare of the child. *Morrill* v. *Morrill,* . . . [83 Conn. 479] 489; *Kelsey* v. *Green,* 69 Conn. 291, 301 . . . . Where there is an outstanding foreign judgment determining custody, the effect to be accorded it as a matter of comity is the same whether it is the judgment of a foreign nation or of a sister state." See *Litvaitis* v. *Litvaitis,* 162 Conn. 540, 545.

In *Adamsen* v. *Adamsen,* supra, 180, the court makes it quite clear that while its ultimate conclusion coincided with that of the Norwegian court, the Connecticut hearing was an independent adjudication made after a full trial rather than a mere enforcement of the foreign judgment. In other words, had the Connecticut court seen fit to do so in the exercise of its discretion, it had the power and right to vary the custody provisions of the Norwegian decree.

Recognition of the Mexican decree in the instant case is a matter of comity among nations. This principle does not, however, require Connecticut to adopt an alien decree as its own, as the plaintiff requests in the relief challenged by demurrer. It is sufficient that Connecticut by virtue of the comity doctrine recognize the Mexican decree if it is not repugnant to the public policy of this state, and

enforce it at law and in equity, including the remedy of contempt, if the circumstances warrant it. *German* v. *German,* 122 Conn. 155, 164.

The demurrer to the requested relief that the Mexican decree be made a decree of this court is sustained.