Joseph R. HYDE, III, Appellant,

v.

Eleanor Lentz HYDE, Appellee,

W. K. West, Jr., Divorce Referee, of
Shelby County, Tennessee,
Appellant.

Supreme Court of Tennessee.

Feb. 13, 1978.

Lucius E. Burch, Jr., Burch, Porter & Johnson, Memphis, for plaintiff.

W. K. West, Jr., Memphis, Divorce Referee of Shelby County, Tenn., for appellant.

## OPINION

FONES, Justice.

Appellant, Divorce Referee of Shelby County, appeals from a declaratory judgment validating, "for reasons of equity and comity", a divorce awarded by a court in the Dominican Republic.

On November 21, 1974, Eleanor Lentz Hyde was awarded a decree of divorce by the Court of First Instance of the Judicial District of Santo Domingo, Dominican Republic. She appeared in person and was represented by an attorney. Joseph R. Hyde, III, was not personally present but was represented by his attorney in fact, by virtue of a power of attorney filed with the Court. These appearances fully satisfied the laws of the Dominican Republic with respect to jurisdiction of divorce actions. The divorce was granted on the ground of incompatibility of temperaments, making life together unbearable. Both parties to the marriage are residents of Memphis, and were residents of Memphis at the time of the divorce.

Joseph Hyde filed this suit in the Chancery Court of Shelby County on November 4, 1976, seeking a declaratory judgment that the Dominican Republic decree was valid, or in the alternative, seeking a divorce. He alleged that prior to October, 1974, the parties were preparing to file suit against each other in the courts of Shelby County, Tennessee, but they effected an agreement settling their property rights and providing for the support of their minor child; that they were then confronted by the prospect of an extensive delay before a divorce could be obtained due to the backlog of divorce cases in Shelby County. Being desirous of returning to the status of unmarried people, after an investigation, both parties submitted to the jurisdiction of the Dominican Republic court and obtained a no fault divorce, believed in good faith to be valid.

Eleanor Lentz Hyde answered, admitting those allegations and insisting that comity be granted the foreign decree, but in the alternative, also counterclaiming for divorce. Thus, in the Tennessee courts, both parties assert the validity of the foreign decree, neither raises any question as to the jurisdiction of the Dominican Republic court over the parties or the subject matter for the purpose of the 1974 proceeding, and they continue to assert that each is bound by the 1974 property settlement agreement. The Divorce Referee appeared in the action to contest the validity of the Dominican Republic decree. The Chancellor granted summary judgment for plaintiff in the declaratory judgment action, and the Divorce Referee perfected a direct appeal to this Court.

Because the decree for which recognition is sought is that of a foreign nation, the sole question here is whether Tennessee will grant comity to the divorce. We have not found any case in which Tennessee courts have considered the question of what effect, should be given a judicial decree from a foreign nation, but the courts of this state have recognized the doctrine of comity in cases where the rights of parties under the laws of other states were at issue, and recognition was not obligatory under the Full Faith and Credit Clause. See *Paper Products Co. v. Doggrell,* 195 Tenn. 581, 261 S.W.2d 127 (1953); *Phillips v. Johns-Man-*

*ville Sales Corp.,* 183 Tenn. 266, 191 S.W.2d 554 (1946); *Finley v. Brown,* 122 Tenn. 316, 123 S.W. 359 (1909); *Lewis v. Woodfolk,* 61 Tenn. 25 (1872); *Lisenbee v. Holt,* 33 Tenn. 42 (1853).

■ The rule of comity to be gleaned from these cases is that, where the law of another jurisdiction is applicable, Tennessee will enforce the substantive rights which litigants have under the laws of the other jurisdiction if such rights are not contrary to the policy of Tennessee. Id.

Resting as it does on the non-obligatory discretion of the forum, comity defies both precise definition and uniform rules of practice. The oft-cited case of *Hilton v. Guyot,* 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895), which contains a thorough examination of the basic principles of comity, defines it as follows:

" 'Comity,' in the legal sense, is neither a matter of absolute obligation on the one hand, nor of mere courtesy and good will upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.

. . . . .

[S]peaking of the difficulty of applying the positive rules laid down by the Continental jurists, . . . [Mr. Justice Story] says that 'there is indeed, great truth' in these remarks of Mr. Justice Porter, speaking for the supreme court of Louisiana: 'They have attempted to go too far, to define and fix that which cannot, in the nature of things, be defined and fixed. They seem to have forgotten that they wrote on a question which touched the comity of nations, and that that comity is, and ever must be, uncertain; that it must necessarily depend on a variety of circumstances which cannot be reduced to any certain rule; that no nation will suffer the laws of another to interfere with her own to the injury of her citizens' that whether they

do or not must depend on the condition of the country in which the foreign law is sought to be enforced, the particular nature of her legislation, her policy, and the character of her institutions; that in the conflict of laws it must often be a matter of doubt which should prevail . . .' " (citation omitted). 159 U.S. at 163–165, 16 S.Ct. at 143, 40 L.Ed. at 108–09.

■ Thus, comity is a discretionary doctrine and may be granted or withheld depending on the particular facts, laws and policies present in an individual case.

In this case, the public policy of this state as reflected by its grounds and jurisdictional requirements for divorce are the issues to be examined in determining the propriety of granting comity.

The majority of states do not grant comity to divorces rendered in foreign jurisdictions where neither spouse was actually domiciled, even where both parties voluntarily submitted to the jurisdiction of the rendering court. See Annotation, 13 A.L. R.3d 1419 (1967).

New York, on the other hand, recognizes foreign divorce decrees valid under the laws of the nation rendering them where the plaintiff spouse appeared personally and the defendant spouse voluntarily appeared through attorney, even though neither party was domiciled there in the Anglo-American legal sense, and the grounds on which the foreign divorce was granted were not recognized in New York. *Rosenstiel v. Rosenstiel,* 16 N.Y.2d 64, 262 N.Y.S.2d 86, 209 N.E.2d 709 (1965). Granting comity in the instant case will not require that we go as far from the majority rule as the New York courts have gone.

■ The public policy of a state is to be found in its constitution, its statutes, and the decisions of its courts. Primarily, it is for the legislature to determine the public policy of the state, and if there is a statute that addresses the subject in question, the policy reflected therein must prevail. *United States v. Trans-Missouri Freight Ass'n,* 166 U.S. 290, 17 S.Ct. 540, 41 L.Ed. 1007 (1897); *Thome v. Macken,* 58 Cal.App.2d 76,

136 P.2d 116 (1943); see *Twin City Pipe Line Co. v. Harding Glass Co.,* 283 U.S. 353, 51 S.Ct. 476, 75 L.Ed. 1112 (1931).

The Tennessee legislature has authorized the granting of divorces on the ground of irreconcilable differences if the parties have, by written agreement, made provisions for the custody and maintenance of any children of the marriage and an equitable settlement of their property rights. Public Acts 1977, Chapter 107. The record in this case reflects compliance with these conditions and the incorporation of the settlement agreement of October 31, 1974, into the decree of divorce. Appellant suggests no distinction between the ground of irreconcilable differences and that of incompatibility of temperaments making life together unbearable, and in our opinion they are substantially equivalent. Thus, the grounds upon which the Dominican Republic decree was awarded cannot be said to be offensive to the public policy of Tennessee.

In addition to New York, a court in Connecticut has granted comity to a Mexican divorce obtained under factual circumstances legally indistinguishable from the instant case. On the question of the public policy considerations arising from Connecticut's grounds for divorce as compared to that of Mexico, a Superior Court of Connecticut said:

"In other words, an internationally foreign decree will be accorded treatment similar to a judgment of one of our sister states, unless it is found to be repugnant to some basic public policy of the state.

No such repugnancy is found here. The divorce in the instant case was granted on grounds which, at the time of the rendition of the decree, would not have been considered proper under the Connecticut statute; that is, incompatibility of temperaments. Today, however, is the point in time from which we should evaluate the state's public policy regarding permissible grounds for divorce. Since the passage of Public Act 73–373, these grounds have included the irretrievable breakdown of the marriage. The grounds on which the Mexican divorce

was granted do not differ so greatly from our current divorce law as to be considered repugnant." *Yoder v. Yoder,* 31 Conn.Supp. 345, 330 A.2d 825, 827 (1974).

Appellant relies on the principle that a bona fide domicile in the divorce forum is essential to confer jurisdiction of the subject matter.

We note that, in the proper case, the domiciliary requirement may serve an important function; requiring domicile in the rendering jurisdiction as a prerequisite to granting comity may effectively prevent a jurisdiction with no legitimate interest in a particular controversy from fixing or altering legal relationships against the laws and policies of the jurisdiction which does have a legitimate interest in the parties, by virtue of their domiciliary status.

We would, of course, deny comity to a foreign nation decree if its lack of jurisdictional requirements equivalent to our own resulted in prejudice to any citizens of this State. It is clear that in this case the difference between Tennessee's jurisdictional requirements and those of the Dominican Republic have in no sense prejudiced the immediate parties. To the contrary, they contend that they have relied upon the validity of the Dominican Republic decree since its rendition more than three (3) years ago and will be prejudiced if we withhold comity.

Appellant contends that it is against public policy for the state as a third party to the marriage contract to "surrender its sovereignty" to a foreign nation whose laws evince no interest in maintaining the stability of marriage as an institution.

We recently had occasion to recognize and affirm that public policy. There is, however, another public policy consideration that is applicable in the aftermath of a hopelessly broken marriage, that was enunciated by this Court many years ago, a policy that also undergirds the legislative enactment allowing divorce on the ground of irreconcilable differences. In *Farrar v. Farrar,* 553 S.W.2d 741 (Tenn.1977), Mr. Justice Henry, writing for the Court said:

"We fully recognize that considerations of public policy demand that the institution of marriage be sheltered and safeguarded. But there is an obverse side to the coin of public policy and consideration must be given to the fact that society is illserved by a legally commanded continuance of a marriage which exists in name only. We quote from the opinion of the late Chief Justice Grafton Green, in *Lingner v. Lingner,* 165 Tenn. 525, 534, 56 S.W.2d 749, 752 (1933): As pointed out by another court, we must take into consideration 'the mischiefs arising from turning out into the world, in enforced celibacy, persons who are neither married nor unmarried.' (Citation omitted.) Society is not interested in perpetuating a status out of which no good can come and from which harm may result." 553 S.W.2d at 744, 745.

Appellant argues that *Hamm v. Hamm,* 30 Tenn.App. 122, 204 S.W.2d 113 (1947), is dispositive of this case because it held that a divorce granted by a jurisdiction in which neither party is domiciled is invalid for lack of subject matter jurisdiction. The case involved the validity of an Arkansas divorce. Plaintiff had fraudulently alleged in the Arkansas action that he was a domiciliary of Arkansas, and the Tennessee court held the divorce void because, *under Arkansas law,* the granting court had no subject matter jurisdiction. Thus, with respect to requiring domicile in the rendering forum of at least one of the parties to a divorce, *Hamm* is silent.

The case at bar is readily distinguishable from *Hamm* because the Dominican Republic divorce was granted in accord with that nation's domiciliary requirements for subject matter jurisdiction.

Appellant argues that summary judgment was inappropriate in this case because appellees were not entitled to judgment "as a matter of law" as required by Rule 56.03, Tennessee Rules of Civil Procedure. This contention is without merit. Throughout the proceedings in the trial court and in this Court, there has been no hint that there was any issue as to any material fact. While Tennessee is not, as a matter of law, *required* to grant comity to any foreign decree, the decision to grant comity in a given situation is nevertheless purely a question of Tennessee law.

The judgment of the Chancery Court of Shelby County declaring the decree of the Court of First Instance, Santa Domingo, Dominican Republic, valid and enforceable is affirmed. Costs are adjudged against Joseph R. Hyde, III.

HENRY, C. J., and COOPER, BROCK and HARBISON, JJ., concur.