Margaret Helen LEITCH, Appellee,

v.

Thomas John Gairloch
LEITCH, Appellant.

No. 85–121.

Supreme Court of Iowa.

Feb. 19, 1986.

As Amended on Denial of Rehearing
March 14, 1986.

Curtis Hewett and Robert J. Laubenthal, of Smith, Peterson, Beckman & Willson, Council Bluffs, for appellant.

Scott H. Peters, of The Peters Law Firm, P.C., Council Bluffs, for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, LARSON, CARTER, and WOLLE, JJ.

CARTER, Justice.

Respondent, Thomas J. Gairloch Leitch, appeals from judgments for support arrearages and future support entered against him on petitioner's action to enforce the provisions of a Canadian divorce decree. Following an appeal, the final judgment in the Canadian action was entered on April 10, 1979. On the basis of that judgment and the record of support payments made by respondent, the district court in Iowa determined the amount of arrearages and entered judgment against the respondent for such sums. In addition, the district court visited a continuing obligation for future support payments upon respondent somewhat different from and in excess of that which had been provided by the Canadian courts. We modify and affirm the judgment of the district court.

Petitioner and respondent were married on August 27, 1960, at Edmonton, Alberta, Canada. They have two children: Michael Dean, born August 14, 1964 and Matthew Christopher, born March 31, 1971. The parties separated on May 5, 1971, and the petitioner filed an action for divorce in a Canadian court on October 5, 1971. Fol-

lowing a preliminary order of separation and maintenance which provided for payments to petitioner by respondent for her support and for the support of the minor children in the sum of $2100 per month, a final divorce was granted on March 7, 1978, and a final support award was entered by the Canadian trial court on April 13, 1978. This support award provided that respondent pay "monthly maintenance to petitioner for her support and the support of the minor children" in the sum of $3300 per month.[1] As a result of respondent's appeal to the appellate division of the Supreme Court of Alberta, the monthly maintenance award was subsequently reduced to $2500.

While the appeal was pending in Canada, respondent, a medical doctor, moved from Canada to Council Bluffs, Iowa, where he has resided since January 12, 1979. During the pendency of the appeal, respondent paid monthly maintenance to the petitioner in the sum of $2100 per month. As a result, after the Canadian appellate court entered its final decision, he was in arrearage to the extent of $400 per month for the period of time involved. There is some dispute concerning payments of these arrearages prior to judgment in the present action, the details of which will be discussed later.

Respondent has appealed from the judgments and decrees of the Iowa District Court. He asserts several grounds for relief, including (1) that the Canadian decree should not be enforced because it was entered in accordance with legal principles which are incompatible with the public policy of this state; (2) that the trial court incorrectly awarded interest due on the arrearages; (3) that the trial court had no authority to modify the support obligations which had been fixed by the Canadian courts; and (4) that the trial court failed to give him full credit for amounts already paid in computation of the arrearages. We consider these claims separately. Other relevant and material facts which bear upon the disposition of this litigation will

be considered in connection with our discussion of the legal issues which are presented.

**I. Whether the Canadian Judgments are so Incompatible with the Public Policy of this State as to Defeat Local Enforcement Thereof.**

■ Respondent urges that the courts of this state should not enforce the support obligations entered by the Canadian courts because they were determined under legal principles which he suggests are incompatible with the public policy of this state. He relies on the principle that judgments of foreign countries are not entitled to enforcement as of right under the full faith and credit clause of the federal constitution, see *Hilton v. Guyot*, 159 U.S. 113, 164–65, 16 S.Ct. 139, 143–44, 40 L.Ed. 95, 100 (1895), and are enforceable only under principles of comity. *See* Restatement (Second) Conflict of Law § 117 comment c (1971). While not directly disputing the legal principles which respondent asserts, petitioner argues that "[c]omity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the [jurisdiction] called upon to give it effect." *Somportex, Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 440 (3rd Cir. 1971), *cert. denied*, 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972).

Principles of comity have been recognized in the enforcement of foreign divorce decrees and child support decrees of foreign states. *See Yoder v. Yoder*, 31 Conn. Supp. 345, 330 A.2d 825, 826–27 (1974); *Litvaitis v. Litvaitis*, 162 Conn. 540, 295 A.2d 519, 522 (1972); *Schwartz v. Schwartz*, 143 So.2d 901, 902 (Fla.Ct.App. 1962); Annot., 13 A.L.R.3d 1419 (1967). Such comity extends to the enforcement of future installment payments ordered under the foreign judgments. *Wolff v. Wolff*, 40 Md.App. 168, 389 A.2d 413, 420–21 (1978).

Respondent's specific claim in the present case is based upon his contention that relative fault of the parties in causing the breakdown of the marriage was taken

---

1. The record indicates that the term "monthly maintenance," as used in Canadian divorce decrees, includes support for both the former spouse and the minor children.

into consideration by the Canadian court in making the economic determinations. He urges that such reliance on fault is incompatible with the public policy of this state as recognized in the decision in *In re Marriage of Williams*, 199 N.W.2d 339, 344–45 (Iowa 1972).

As factual support for this claim respondent points to the following statements from the decision of the Canadian trial court:

> Mr. L. said that the marriage was never satisfactory, that they never got along together, that they had many violent quarrels, at times things were thrown around the apartment, that living together became impossible and that it was mostly "her fault." Mrs. L. said there were quarrels, but they were not serious enough to prevent a good married life.... She said that during their last quarrel, just before he left, he told her that he was then qualified to practice medicine and did not need her help any longer. Mr. L. said that on the day he left she told him to leave. It would appear that this bad tempered remark by her was a trivial matter in the separation as Mr. L. was clearly at the time involved in an affair with Miss G.
>
> ....
>
> "Where cohabitation has been disrupted by a matrimonial offence on the part of the husband, the wife's and children's maintenance should be so assessed that their standard of living does not suffer more than is inherent in the circumstances of separation.... [I]n general the wife and children should not be relegated to a significantly lower standard of living than that which the husband enjoys...."
> [Citing cases]
>
> ... consideration was given to the evidence concerning the years when Mr. and Mrs. L. lived together. She was obviously a very attractive and intelligent and high spirited young lady (as she still is). Those years from 1960 to 1971 were years when she could certainly have had a life full of social activity and much pleasure. However, she obviously de-

nied herself those pleasures and devoted herself to helping him become a specialist in his profession.

We do not find that the foregoing remarks, when viewed in their entirety, establish that the Canadian judgments are sufficiently violative of local policies that they should not be given recognition in the present action. In *Laker Airways v. Sabena Belgian World Airlines*, 731 F.2d 909, 931 (D.C.Cir.1984), the court stated that "the standard for refusing to enforce [foreign nation's] judgments on public policy grounds is strict." The court in *Laker* indicated that the test is whether "the judgment is predicated on laws repugnant to the domestic forum's conception of decency and justice." *Id.* at n. 71.

Given the evidence in the record of the needs of petitioner and the minor children and respondent's ability to meet those needs, we cannot say with certainty that a court in this state, if it had heard this matter in the first instance, would not have arrived at similar determinations based entirely on the economic considerations involved. Accordingly, we view the judgment of the Canadian courts as fully settling the rights and obligations as between the parties to this action concerning the payment of those sums for which claim is made in the petition. We give the Canadian judgment such effect on our de novo review of the appeal.

**II. Petitioner's Entitlement to Interest on the Arrearages in Support Payments.**

■ Respondent argues that, because the Canadian judgment was not enforceable in this state absent confirmation thereof by the courts of the forum, his obligation to pay was not liquidated or made certain until the conclusion of the Iowa litigation. Accordingly, he urges that petitioner had no right to receive interest on the amount now determined to be owing under the Canadian judgment until an Iowa court declared what was owed. The interest provided in the district court's judgment appears to be less than the maximum permitted under Iowa Code section 535.3. *See Janda v. Iowa Industrial Hydraulics,*

*Inc.,* 326 N.W.2d 339 (Iowa 1982). The district court did not err in ordering respondent to pay interest on the arrearages found to exist on the Canadian judgment.

### III. Whether Trial Court had Authority to Modify the Obligation Fixed by Canadian Courts.

■ Respondent next urges that, because petitioner's action, as stated in her petition, only sought to enforce those determinations which had been made by the Canadian courts, it was improper for the district court in the present proceeding to order that future support payments by respondent be other than those which had been established in Canada.[2] In considering this contention, we note that there was no request in the petition filed in the Iowa District Court that respondent's support obligation be fixed in any manner other than that which had been declared in the Canadian litigation. Such contention on petitioner's part first surfaced in a trial memorandum filed in the district court on the day before the commencement of the trial.

Petitioner responds to this argument by pointing out that respondent, himself, requested in this answer to the petition that a reduction be made in his future child support obligation. Such request, petitioner claims, injected the issue of modification into the case and permitted modification of respondent's support obligation either upward or downward depending upon the court's view of the evidence.

While petitioner's contentions have some facial appeal, they overlook the differences in theory between the respective claims of the parties. Because the Canadian judgment is not self-executing, it may be given no force and effect in this state except as our courts adjudge that this shall be done. When viewed in this light, respondent's request for reduction in the amount of future child support payments is, in effect, a pro tanto defense against enforcement of the claims being made. It is not a request for modification of the Canadian decree.

Some authority exists for courts of one state, where called upon to enforce support decrees of another state, to also modify prospectively the effect of the foreign decree in the forum state. *See Engle v. Superior Court,* 140 Cal.App.2d 71, 78, 294 P.2d 1026, 1030 (1956); *Amato v. Sanborn,* 47 Mich.App. 244, 248–49, 209 N.W.2d 429, 431 (1973). This should not be done, however, except as would have been permitted under the law of the jurisdiction where the original judgment was entered. *Engle,* 140 Cal.App.2d at 78, 294 P.2d at 1030. In the case of child support, any harsh results produced by the latter limitation may be avoided by bringing an original action for support under Iowa Code section 252A.5 (1985) in which unacceptable provisions in the foreign judgment need not be given preclusive effect. *See Iowa Department of Social Services ex rel. Blakeman v. Blakeman,* 337 N.W.2d 199, 204 (Iowa 1983).

In the present case, the record indicates that there are substantial differences between the concepts of "monthly maintenance" imposed in the Canadian decree and the bifurcated awards of alimony and child support contained in the modification of that decree by the Iowa district court. Absent some showing by petitioner concerning how a Canadian court might react to a request that a "monthly maintenance" allowance be divided into separate parts and increased, we are reluctant to approve alteration of respondent's obligation. We therefore modify the district court decree to the extent that it altered his obligation with respect to future support.

### IV. Credit to be Accorded to Respondent for Miscellaneous Payments.

■ Finally, we consider respondent's claims that the trial court erred by failing to give credit for payments he made to petitioner in determining the amount of the

---

2. For the future, the district court's decree divided respondent's support obligation between alimony and child support. The alimony portion was fixed at 2500 Canadian dollars per month (the total amount of the Canadian judgment) and an additional child support award of 400 Canadian dollars per month per child was established.

judgment. Our de novo review of the evidence convinces us that, in February 1979, payments were made to petitioner in the sum of $3600. To the extent that respondent also claims that an additional $1700 was paid to petitioner, through her Canadian lawyers, at about this same time, we conclude that he has failed to establish that allegation by a preponderance of the evidence. The trial court erred in failing to give credit for the $3600 payment in computing the total arrearage.

In addition, we note that, during the pendency of the Iowa litigation, respondent made payments to petitioner in the sum of $1200 per month pursuant to a "temporary order" of the Iowa district court. To the extent that the record reflects these payments by respondent were not credited against the $2500 per month accruing under the Canadian judgment for the same period of time, this should now be done in determining the amounts owed as of the date of the Iowa judgment.

The judgment for arrearages and interest thereon should be modified by the district court to reflect the changes directed herein. It should also be modified to provide that respondent's future child support obligations shall remain as fixed in the Canadian decree. The same rate of exchange applied in the trial court's judgments shall prevail in the amended judgments. The judgment is otherwise affirmed. In response to claims for costs and attorney fees on appeal, we direct that the parties pay their own attorney fees and that costs of appeal be assessed seventy-five percent to appellant, twenty-five percent to appellee.

AFFIRMED AS MODIFIED.