231 P.3d 983

Geraldine CVITANOVICH–DUBIE, now known as Geraldine Cvitanovich, Plaintiff–Appellant,

v.

Nancy DUBIE, Personal Representative of the Estate of George Patrick Dubie, Defendant–Appellee.

No. 28928.

Intermediate Court of Appeals of Hawai'i.

April 12, 2010.

As Corrected April 14, 2010.

Michael Jay Green, Howard Glickstein, Honolulu, Kimberly A. Van Horn, on the briefs, for Plaintiff–Appellant.

Raymond K. Okada, Bruce L. Lamon, and Kimberly J. Koide (Goodsill Anderson Quinn & Stifel), Paul A. Tomar (Ashford & Wriston), Honolulu, on the briefs, for Defendant–Appellee.

NAKAMURA, C.J., FOLEY and LEONARD, JJ.

Opinion of the Court by FOLEY, J.

Plaintiff–Appellant Geraldine Cvitanovich–Dubie, now known as Geraldine Cvitanovich, (Geraldine) appeals from the "Order Denying Plaintiff's Motion for Post–Decree Relief to Vacate Divorce Decree or Set Aside Property Division Pursuant to Hawaii Family Court Rule 60( [b] ), Filed June 28, 2007" (Order) filed on December 18, 2007 in the Family Court of the First Circuit (family court).[1]

In the November 28, 2003 Divorce Decree (11/28/03 Decree), the family court granted the divorce of Geraldine and George Patrick Dubie (Dubie). Dubie died on July 2, 2006,

and on October 8, 2007, the family court orally granted the substitution of Nancy Dubie (Nancy), Personal Representative of the Estate of George Patrick Dubie, as the defendant.

On appeal, Geraldine contends the family court reversibly erred in refusing to vacate the 11/28/03 Decree, which, she argues, is void *ab initio*[2] as a matter of law for the following reasons:

(1) The family court did not have subject matter jurisdiction over Dubie and Geraldine when the court issued the 11/28/03 Decree because Dubie and Geraldine were never legally married to each other. When Dubie purportedly married Geraldine, he was still married to Sylvie Bertin (Sylvie). Dubie and Sylvie were still married because the Fifth Circumscription of the Civil and Commercial Chamber of the National District in the Dominican Republic court (Dominican court), which issued Dubie and Sylvie's divorce decree (Dominican Decree), lacked subject matter jurisdiction over Dubie and Sylvie because neither of them was a resident or domiciliary of the Dominican Republic and, therefore, the Dominican Decree is void *ab initio*. The Dominican Decree is not entitled to comity, recognition, or enforcement in Hawai'i. In the family court's "Findings of Fact[ ] and Conclusions of Law with Respect to Claims Made by Plaintiff Geraldine Cvitanovich–Dubie in Her Motion for Post–Decree Relief to Vacate Divorce Decree or Set Aside Property Division Pursuant to Hawaii Family Court Rule 60( [b] ) Filed on June 28, 2007" (FOF's/COLs Re Motion for Post–Decree Relief), Findings of Fact (FOFs) 11 through 16, 19, 22, 23, 25, and 27 are clearly erroneous, and Conclusions of Law (COLs) 35 and 39 are wrong.

(2) The undisputed evidence showed that the "notice" of Dubie and Sylvie's divorce (the Dominican divorce) given to Geraldine was inadequate, a violation of the Due Process Clause of the United States Constitution.

---

1. The Honorable R. Mark Browning presided.

2. "Ab initio" means "from the beginning." *Black's Law Dictionary* 5 (8th ed. 2004). "In Hawai'i, living person A's purported marriage to living person C, while living person A is lawfully married to living person B, is void *ab initio*." *Tagupa v. Tagupa*, 108 Hawai'i 459, 461, 121 P.3d 924, 926 (App.2005).

(3) The Dominican Decree is subject to collateral attack because it is void *ab initio,* and Conclusion of Law (COL) 34 is wrong.

(4) The family court erroneously denied Geraldine relief or, at least, an evidentiary hearing pursuant to Hawai'i Family Court Rules (HFCR) Rule 60(b)(6) because Geraldine proved her case of undue influence and fraud on the court, which Nancy failed to rebut. Related to this argument is Geraldine's contention that COLs 31, 40, 41 and 44 are wrong.

Geraldine also contends FOFs 6, 7, 8, 10, 17, and 28 are clearly erroneous; COLs 30, 32, 36, 37, 38, 42, and 43 are wrong; and COLs 40, 41, and 44 are wrong for reasons other than that stated in paragraph (4) *supra.*

Geraldine requests that we reverse the Order, instruct the family court to grant "Plaintiff's Motion for Post Decree Relief to Vacate Divorce Decree or Set Aside Property Division Pursuant to Hawaii Family Court Rule 60( [b] )" (Motion for Post–Decree Relief), and vacate the 11/28/03 Decree pursuant to HFCR Rule 60(b)(4) as void *ab initio.* Alternatively, she asks that we reverse the Order and either instruct the family court to grant the Motion for Post–Decree Relief or grant her an evidentiary hearing.

**I.**

On February 25, 2008, the family court filed its FOFs/COLs Re Motion for Post–Decree Relief, which provides in relevant part:

> WHEREAS, [Geraldine] filed [the Motion for Post–Decree Relief] on June 28, 2007. . . .
>
> WHEREAS, On September 11, 2007, Nancy filed an Opposition Memorandum to [the Motion for Post–Decree Relief] ("Opposition Memorandum").
>
> WHEREAS, [Geraldine] filed a reply to Nancy's Opposition Memorandum on September 14, 2007.
>
> WHEREAS, on September 17, 2007, Nancy filed a Supplemental Memorandum in Opposition to [the Motion for Post–Decree Relief] ("Supplemental Opposition Memorandum").
>
> WHEREAS, on September 18, 2007, [Geraldine] filed a reply to Nancy's Supplemental Opposition.
>
> WHEREAS, the matter came on for hearing on September 19, 2007 and October 8, 2007, before the Honorable R. Mark Browning, pursuant to [the Motion for Post–Decree Relief]. . . .
>
> WHEREAS, pursuant to the [family court's] order, the parties submitted additional briefings on November 7, 2007 and November 16, 2007.
>
> WHEREAS, the [family court], having considered the applicable law, the uncontroverted evidence, the applicable standard of proof, the memoranda presented and the arguments of counsel, issued an order denying [Geraldine's] [Motion for Post–Decree Relief], and makes the following [FOFs] and [COLs].
>
> I.  PARTIES
>
> 1.  [Geraldine] is a resident of the State of Hawai'i.
>
> 2.  The Decedent, [Dubie] was a resident of the State of Hawai'i. Dubie was killed in Thailand on July 2, 2006.
>
> 3.  [Nancy] was appointed as the Personal Representative of the Estate of George Patrick Dubie by the Probate Division of the First Circuit Court of the State of Hawai'i. . . . Pursuant to the [family court's] oral order on October 8, 2007, Nancy was substituted with title as [Dubie].
>
> II.  CLAIMS ASSERTED BY [GERALDINE]
>
> 4.  In [Geraldine's] [Motion for Post–Decree Relief], [Geraldine] seeks an order to set aside the [11/28/03 Decree] on the basis that the marriage between [Geraldine] and Dubie is void *ab initio.* In the alternative, [Geraldine] seeks to set aside the property division portion of the [11/28/03 Decree] because of her claim that Dubie, through fraud, undue influence and deception, caused [Geraldine] to agree to transfer real property, personal property and other things of value to him via contracts, some of which became incorporated in the [11/28/03 Decree] issued by the

[family court] and some of which were post-divorce decree transfers.

III.   FINDINGS OF FACT[ ]

5.   [Dubie] married [Sylvie] on October 2, 1989 in Honolulu, Hawai'i.

6.   On February 7, 1995, the [Dominican] court granted [the Dominican] Decree, terminating the marriage between Dubie and Sylvie. . . .

7.   Notice of the [Dominican] Decree was mailed to Dubie that same day.

8.   The [Dominican] Decree became a definite and final ruling on the date of pronouncement, April 24, 1995.

9.   Neither Dubie nor Sylvie filed an appeal to set aside the [Dominican] Decree.

10.   The time-period [sic] to appeal the [Dominican] Decree elapsed on April 7, 1995, two months after the [Dominican] Decree was entered.

11.   From February 2, 1995 until present, Sylvie relied upon the validity of the [Dominican] Decree entered by the [Dominican court].

12.   Ever since the [Dominican] Decree was entered, Sylvie has held herself out as being divorced from Dubie.

13.   Prior to [Geraldine's] [Motion for Post–Decree Relief], at no time did anyone ever question the validity of the [Dominican] Decree.

14.   Sylvie did not question the validity of the [Dominican] Decree because when purchasing a home in 1995, Sylvie successfully proved the validity of the [Dominican] Decree to an attorney in the province of Quebec, Canada.

15.   In reliance on the [Dominican] Decree, Sylvie and Dubie's daughter, Felicia ("Felicia"), had her last name changed to "Dubie" so that she would be able to live with her father.

16.   In 1995, the U.S. Embassy certified and recognized the [Dominican] Decree by acknowledging the Dominican Republic divorce procedures.

17.   In or around March 1996, after his divorce from Sylvie, Dubie and [Geraldine] met.   [Geraldine] is co-founder of the diet herbal supplement company, "Herbalife."

18.   Shortly thereafter, while residing in Hawai'i, Dubie introduced [Geraldine] to Sylvie.

19.   With full knowledge of the [Dominican] Decree, on or about April 30, 1996, [Geraldine] completed and submitted a Marriage· License Application to the Department of Health for the State of Hawai'i.

20.   The application for marriage license indicated that Dubie's marriage to Sylvie ended in divorce in 1995 in the Dominican Republic, Caribbean.

21.   [Geraldine] signed the Marriage License Application and swore under oath that the information contained in the application was true and correct to the best of her knowledge.

22.   On May 1, 1996, Dubie and [Geraldine] participated in a ceremonial marriage performed by a person duly authorized to perform marriages in the State of Hawai'i.

23.   At the time of the marriage ceremony, [Geraldine] had knowledge, or at least, had constructive knowledge of the [Dominican] Decree and that it was obtained in the Dominican Republic.

24.   In the following few years, Dubie and [Geraldine] met with Sylvie and Felicia in Ottawa in 1997, and in Disneyworld in 1998.

25.   Based on Sylvie's meetings with Dubie and [Geraldine], Sylvie had an opportunity to observe Dubie and [Geraldine's] relationship.   Dubie relied upon the validity of the [Dominican] Decree and held himself out as being divorced.   Sylvie also observed that after Dubie and [Geraldine] were married, they acted like a married couple, lived together and introduced each other as husband and wife.

26.   [Geraldine] established a Qualified Terminable Interest Property Trust ("QTIP Trust") and named Sylvie and Dubie's children as beneficiaries of the QTIP Trust.

27.   In November 2003, [Geraldine] filed a petition for divorce and the [family court] granted it on November [28], 2003.

28.   After the [11/28/03 Decree] was entered, [Geraldine] continued to portray the

image that she and Dubie were still married in order to protect her image as well as the image of her company, "Herbalife."

29. On July 2, 2006, Dubie was shot and killed in Thailand. A Report of Death of An American Citizen was filed on November 8, 2006.

[IV.] CONCLUSIONS OF LAW

30. The [family court] has subject matter jurisdiction and personal jurisdiction over the parties pursuant to HRS [Hawaii Revised Statutes] § 580–1.[HRS] § 580–1 (2006).

31. [Geraldine's] claims sound in fraud or other intentional misconduct, and therefore are time-barred pursuant to [HFCR Rule] 60(b)(3). *[Wehrle] v. Robison,* [92 N.M. 485] 590 P.2d 633 (N.M.1979); [HFCR Rule] 60(b)(3).

32. Determining whether a judgment should be set aside pursuant to Rule 60(b) of the [HFCR] is not a matter of discretion. *In re Hana Ranch Co.,* 3 Haw.App. 141, 146, 642 P.2d 938, 941 (1982).

33. In the sound interest of finality, the concept of a void judgment must be narrowly restricted. *Dillingham Inv. Corp. v. Kunio Yokoyama Trust,* 8 Haw.App. 226, 233–34, 797 P.2d 1316, 1319–20 (1990).

34. [Geraldine] does not have standing to collaterally attack the validity of the [Dominican] Decree in the [family court]. *Bair v. Bair,* [91 Idaho 30] 415 P.2d 673, 673 (Idaho 1966); *deMarigny v. deMarigny,* 43 So.2d 442 (Fla.1949); *Ruger v. Heckel,* 85 N.Y. 483 (N.Y.1881); *Suiter v. Suiter,* [74 Ohio App. 44] 57 N.E.2d 616 (Ohio Ct.App.1944).

35. The [Dominican] Decree is recognized by the [family court] under the principle of comity. *Metcalf v. Voluntary Employees' Ben. Ass'n of Hawaii,* 99 [Hawai'i] 53, 58, 52 P.3d 823, 828 (2002); *Hilton v. Guyot,* 159 U.S. 113, 205–06 [16 S.Ct. 139, 40 L.Ed. 95] (1895); *In re Marriage of Goode,* [165 Or.App. 327] 997 P.2d 244 (Or.Ct.App.2000); *Cliburn v. Cliburn,* [209 Miss. 631] 48 So.2d 126 (Miss.1950); *In Re Marriage of DeLeon,* 804 S.W.2d 801 (Mo. Ct.App.E.D.1991); *Rabbani v. Rabbani,* 178 A.D.2d 637 [578 N.Y.S.2d 213] (N.Y. 2 Dept.1991); *Gonzalez v. Beraha,* 449

F.Supp. 1011 (D.C.Canal Zone 1978); *Hyde v. Hyde,* 562 S.W.2d 194 (Tenn.1978). The [11/28/03 Decree] is not *void ab initio* and should not be set aside. *Id.*

36. The facts in this case are not enough to overcome the presumption of validity of [Geraldine's] marriage to Dubie. *Davis v. Davis,* [55 Or.App. 982] 640 P.2d 692 (Or.Ct.App.1952); *Parker v. American Lumber Corp.,* [190 Va. 181] 56 S.E.2d 214 (Va.1949); *Metropolitan Life Ins. Co.,* [206 Va. 602] 145 S.E.2d 177 (Va.1965).

37. Dubie and [Geraldine's] marriage is not void because the purported impediment—the alleged bigamous marriage—was eliminated by Dubie's death. *Smith v. Smith,* [52 Wis.2d 262] 190 N.W.2d 174 (Wis.1971); *[Werden] v. Thorpe,* [126 Or. App. 97] 867 P.2d 557 (Or.App.Ct.[1994]).

38. The [Dominican] Decree cannot be set aside based on the principle of res judicata. *[164] East Seventy–Second Street Corp. v. Ismay,* [65 Cal.App.2d 574] 151 P.2d 29 (Cal.Ct.App. 4 Dist.1944); *China Trade & Dev. Corp. v. M.V. Choong Yong,* 837 F.2d 33, 36 (2nd Cir.1987).

39. [Geraldine] is estopped from asserting that [her] marriage to Dubie is void based on the principle of estoppel and unclean hands. *Mayer v. Mayer,* [66 N.C.App. 522] 311 S.E.2d 659 (N.C.Ct.App. 1984); *De Marco v. De Marco,* [73 A.D.2d 28] 426 N.Y.S.2d 127 (N.Y.3d Dep't 1980); *Taylor v. Taylor,* S.E.2d [sic] 542, 546 (1987); *Chilcott v. Chilcott,* 257 Cal.App.2d 868 [65 Cal.Rptr. 263] (Cal.[App.]1968); *Bruguiere v. Bruguiere,* [172 Cal. 199] 155 P. 988 (Cal.[1916]).

40. Property settlement agreements between husband and wife made in contemplation of divorce or judicial separation are favored by the courts and will be strictly enforced if fair and equitable and not against public policy. *Harrington v. Harrington,* 41 Haw. 89 (Hawai'i Terr. 1955).

41. The property division portion of a Divorce Decree is an enforceable contract and should not be set aside. *Swint v. Swint,* [238 Or. 367] 395 P.2d 114, 114[sic] (Or.1964).

42. [Geraldine's] assertion to set aside the property division portion of the [11/28/03 Decree] is really a creditor's claim which should be decided by the probate court. [HRS] § 560:3–105 (2006).

43. Dubie and [Geraldine] are at the very least, putative spouses for purposes of this court deciding property division issues. *Super v. Burke,* 367 So.2d 93, 93[sic] (La.Ct.App.1979).

44. [Geraldine's] claims to set aside the [11/28/03 Decree] and the [11/28/03 Decree's] property division portion are based on fraud and are therefore barred by the one-year statute of limitations pursuant to Rule 60(b)(3) of the [HFCR]. *Parks v. Parks,* [91 N.M. 369] 574 P.2d 588 (N.M. 1978); *Calasa v. Greenwell,* 2 Haw.App. 395, 633 P.2d 553 (1981).

(Formatting altered; record references omitted.)

## II.

### A. Family Court Decisions

■ Generally, the family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion. Thus, an appellate court will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

*Schiller v. Schiller,* 120 Hawai'i 283, 287, 205 P.3d 548, 552 (App.2009) (brackets omitted) (quoting *Fisher v. Fisher,* 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006)).

### B. HFCR Rule 60(b)

In general, the standard of review for the grant or denial of an HFCR Rule 60(b) motion is "whether there has been an abuse of discretion." *De Mello v. De Mello,* 3 Haw. App. 165, 169, 646 P.2d 409, 412 (1982).

■ With regard to HFCR Rule 60(b)(4) in particular, "[t]he determination of whether a judgment is void is not a discretionary issue. . . . [A] judgment is void only if the court that rendered it lacked jurisdiction of either the subject matter or the parties or otherwise acted in a manner inconsistent with due process of law." *In re Hana Ranch Co.,* 3 Haw.App. 141, 146, 642 P.2d 938, 941 (1982).

### C. FOFs

FOFs are reviewed under the clearly erroneous standard. An FOF is clearly erroneous when (1) the record lacks substantial evidence to support the finding or determination, or (2) despite substantial evidence to support the finding or determination, the appellate court is left with the definite and firm conviction that a mistake has been made.

*Schiller,* 120 Hawai'i at 288, 205 P.3d at 553 (internal quotation marks, citation, and brackets omitted).

### D. COLs

A COL is not binding upon an appellate court and is freely reviewable for its correctness. An appellate court ordinarily reviews COLs under the right/wrong standard. Thus, a COL that is supported by the trial court's FOFs and that reflects an application of the correct rule of law will not be overturned. However, a COL that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case.

*Id.* (brackets omitted) (quoting *Chun v. Bd. of Trs. of the Employees' Ret. Sys. of the State of Hawai'i,* 106 Hawai'i 416, 430 106 P.3d 339, 353 (2005)).

### E. Weight of the Evidence/Credibility Determinations

"[I]t is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the trier of fact." *Inoue v. Inoue,* 118 Hawai'i 86, 101, 185 P.3d 834, 849 (App.2008) (internal quotation marks and citation omitted).

### F. Application of Equitable Doctrine

■ "A court's decision to invoke equitable relief . . . is a matter within its discretion."

*7's Enters., Inc. v. Del Rosario,* 111 Hawai'i 484, 489, 143 P.3d 23, 28 (2006).

### G. Harmless Error

"Hawaii Rules of Evidence (HRE) Rule 103(a) provides that 'error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected.'" *Schiller,* 120 Hawai'i at 288, 205 P.3d at 553 (brackets omitted).

### H. Statutory Construction

The standard of review for statutory construction is well-established. The interpretation of a statute is a question of law which this court reviews *de novo*. In addition, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And where the language of the statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning. Finally, in determining the purpose of the statute, we are not limited to the words of the statute to discern the underlying policy which the legislature seeks to promulgate but may look to relevant legislative history.

*State v. Wells,* 78 Hawai'i 373, 376, 894 P.2d 70, 73 (1995) (brackets, citations, ellipsis and internal quotation marks omitted). Furthermore,

we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

. . . .

*State v. Rauch,* 94 Hawai'i 315, 322, 13 P.3d 324, 331 (2000) (block quote format, brackets, citations, ellipses and internal quotation marks omitted).

*Child Support Enforcement Agency v. Carlin,* 96 Hawai'i 373, 379, 31 P.3d 230, 236 (App.2001).

### III.

Geraldine contends the family court reversibly erred in refusing to vacate its 11/28/03 Decree.

### A. Jurisdiction

Geraldine contends the family court did not have subject matter jurisdiction over her and Dubie when the court filed the 11/28/03 Decree. Her reasoning is as follows: Dubie and Geraldine were never legally married to each other because Dubie was still married to Sylvie at the time he purportedly married Geraldine. Dubie was still married to Sylvie because the Dominican court did not have subject matter jurisdiction in the Dominican divorce. The Dominican court did not have subject matter jurisdiction because neither Dubie nor Sylvie was a resident or domiciliary of the Dominican Republic at the time the Dominican court granted the Dominican Decree. Hence, the Dominican Decree supposedly dissolving the marriage between Dubie and Sylvie is void *ab initio*. Geraldine also claims that the Dominican Decree is not entitled to comity, recognition, or enforcement in Hawai'i. She argues that "a foreign 'ex parte' divorce for cause between persons not domiciled or resident in the foreign country . . . has never been recognized in any state in the United States, and has been universally rejected." Related to these arguments is her contention that COL 35 is wrong.

#### 1. Dominican Decree not entitled to pro forma recognition

In COL 35, the family court found:

35. The [Dominican] Decree is recognized by the [family court] under the principle of comity. *Metcalf v. Voluntary Employees' Ben. Ass'n of Hawaii,* 99 [Hawai'i] 53, 58, 52 P.3d 823, 828 (2002); *Hilton v. Guyot,* 159 U.S. 113, 205–06 [16 S.Ct. 139, 40 L.Ed. 95] (1895); *In re Marriage of Goode,* [165 Or.App. 327] 997 P.2d 244 (Or.Ct.App.2000); *Cliburn v. Cliburn,* [209 Miss. 631] 48 So.2d 126 (Miss.1950); *In Re Marriage of DeLeon,* 804 S.W.2d 801 (Mo. Ct.App.E.D.1991); *Rabbani v. Rabbani,* 178 A.D.2d 637 [578 N.Y.S.2d 213] (N.Y. 2 Dept.1991); *Gonzalez v. Beraha,* 449

F.Supp. 1011 (D.C.Canal Zone 1978); *Hyde v. Hyde,* 562 S.W.2d 194 (Tenn.1978). The [11/28/03 Decree] is not *void ab initio* and should not be set aside. *Id.*

■ The Hawai'i appellate courts apparently have never addressed whether the family court, based on the principle of comity, should recognize a divorce decree obtained in a foreign country when at least one of the parties was not a domiciliary[3] of that country. "Comity" is defined as "the principle that courts of one state or jurisdiction will give effect to the laws and judicial decisions of another state or jurisdiction out of deference and mutual respect." *Metcalf v. Voluntary Employees' Benefit Ass'n of Hawaii,* 99 Hawai'i 53, 58, 52 P.3d 823, 828 (2002) (internal quotation marks and citation omitted).

■ A United States court "may, but is not required to, recognize a divorce decree from a foreign country under the doctrine of comity." *Adams v. Adams,* [177 Vt. 448] 869 A.2d 124, 127 (Vt.2005); *see e.g., Yu v. Zhang,* [175 Ohio App.3d 83] 885 N.E.2d 278, 284 (Ohio Ct.App.2008) (holding that "comity is an Ohio court's recognition of a foreign [divorce] decree as a matter of courtesy"); *Jahed v. Acri,* 468 F.3d 230, 235 (2006) (holding that generally, a court will recognize a divorce decree under the principle of comity); *Basiouny v. Basiouny,* 445 So.2d 916, 918 (Ala.Civ.App.1984) (holding that a "divorce obtained in a foreign country is recognized by comity").

■ The majority of United States courts refuse to recognize a divorce obtained in a foreign country where neither party was a domiciliary[4] of that country:

Regardless of its validity in the nation awarding it, the courts of this country will not generally recognize a judgment of divorce rendered by the courts of a foreign nation as valid to terminate the existence of the marriage unless, by the standards of the jurisdiction in which recognition is sought, at least one of the spouses was a good-faith domiciliary in the foreign nation at the time the decree was rendered.

R.F. Chase, Annotation, *Domestic Recognition of Divorce Decree Obtained in Foreign Country and Attacked for Lack of Domicil or Jurisdiction of Parties,* 13 A.L.R.3d 1419, 1425 (1967). *See e.g., Carr v. Carr,* 724 So.2d 937, 940 (Miss.Ct.App.1998) (holding that for Mississippi court to recognize validity of divorce decree husband obtained in Dominican Republic, husband would have to demonstrate he traveled to Dominican Republic with intent to remain there and not solely for purpose of securing a divorce); *Bruneau v. Bruneau,* 3 Conn.App. 453, 489 A.2d 1049, 1051 (1985) (stating United States courts will not generally recognize judgment of divorce granted by court of foreign nation unless, by standards of jurisdiction in which recognition is sought, at least one spouse was good-faith domiciliary in foreign nation at time decree was rendered); *Mayer v. Mayer,* 66 N.C.App. 522, 311 S.E.2d 659, 664 (1984) (holding that Dominican court had insufficient jurisdiction to issue divorce decree to two persons domiciled in North Carolina and, citing to Annot., 13 A.L.R.3d 1419, stating that "[t]he great weight of authority in this country is that divorces granted in foreign countries to persons who are domiciliaries of the United States are not valid and enforceable"); *Basiouny,* 445 So.2d at 919 (holding that Alabama trial court did not err by refusing to recognize Egyptian divorce decree where neither party was domiciled in Egypt at time decree was issued); *Sargent v. Sargent,* 225 Pa.Super. 1, 307 A.2d 353, 356 (1973) (holding that "[a]n absolute prerequisite to judicial recognition of an out-of-state divorce is that the plaintiff must have resided in the ... country for a minimum period of residency" and "the residency be accompanied by 'domiciliary intent'"); *Clark v. Clark,* 192 So.2d 594, 596–97 (La.Ct.App.1966) (re-

---

3. A "domiciliary" is "[a] person who resides in a particular place with the intention of making it a principal place of abode; one who is domiciled in a particular jurisdiction." *Black's Law Dictionary* 524 (8th ed. 2004).

4. "Under our system of law, judicial power to grant a divorce—jurisdiction, strictly speaking—

is founded on domicil.... Domicil implies a nexus between person and place of such permanence as to control the creation of legal relations and responsibilities of the utmost significance." *Williams v. State of North Carolina,* 325 U.S. 226, 229, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945) (citation omitted).

fusing to uphold validity of Mexican divorce decree where parties, residents and domiciliaries of Louisiana, went to Mexico for sole purpose of obtaining divorce); *Sohnlein v. Winchell*, 230 Cal.App.2d 508, 41 Cal.Rptr. 145, 146–47 (1964) (refusing to recognize Mexican divorce decree where party stayed in Mexico for only two or three days, after which decree was issued, and holding that "where the foreign jurisdiction has no legitimate interest in the status of the parties, or where the sole purpose of seeking the divorce in the foreign jurisdiction is to evade the policy of this state, the judgment should not be recognized"); *Cross v. Cross*, 94 Ariz. 28, 381 P.2d 573, 574 (1963) (holding that Mexican divorce was a nullity and totally void where parties were not residents of Mexico because "Mexican Court ... did not have the slightest semblance of jurisdiction to adjudicate the marital status" of the parties).

█ Neither Dubie nor Sylvie was domiciled in the Dominican Republic at the time the Dominican court issued the Dominican Decree. To recognize the Dominican divorce would violate our public policy of requiring an applicant for divorce to be domiciled or physically present in the state for at least six

months to qualify for a divorce. HRS § 580–1 (2006 Repl.) provides:

§ 580–1 Jurisdiction; hearing. Exclusive original jurisdiction in matters of ... divorce ... is conferred upon the family court of the circuit in which the applicant has been domiciled or has been physically present for a continuous period of at least three months next preceding the application therefor. No absolute divorce from the bond of matrimony shall be granted for any cause unless either party to the marriage has been domiciled or has been physically present in the State for a continuous period of at least six months next preceding the application therefor.

Given the foregoing, we decline to depart from the majority rule and hold that the circuit court abused its discretion in recognizing the Dominican Decree on the basis of comity and that COL 35 is wrong.[5]

**2. Dominican Decree entitled to practical recognition based on quasi-estoppel**

Even though the foreign decree may not be entitled to pro forma recognition, most courts agree that practical recognition may

---

5. In making this holding, we note that in COL 35, only one of the authorities the family court cites to supports the court's conclusion therein. The applicable portion of *Metcalf* to which the court cites merely defines the term "comity." 99 Hawai'i at 58, 52 P.3d at 828. The following authorities to which the family court cites are inapplicable to this case. The portion of *Hilton v. Guyot*, 159 U.S. 113, 205–06, 16 S.Ct. 139, 40 L.Ed. 95 (1895), concerns whether a United States court should acknowledge a money judgment against an American citizen made by a foreign court, in a case brought by a citizen of that foreign country. In *In re Marriage of Goode*, 165 Or.App. 327, 997 P.2d 244, 246 & 249 (2000), the Court of Appeals of Oregon found that it would grant comity to a Dominican divorce decree where the wife and husband were Columbian residents and domiciliaries at the time of the divorce because "[a]ny public policy of the State of Oregon to prevent forum shopping could not have been violated under those circumstances, as it might have been had wife been an Oregon resident at the time that she obtained the divorce." *Cliburn v. Cliburn*, 209 Miss. 631, 48 So.2d 126, 126–27 (1950), concerned whether the chancery court of Mississippi had the power to set aside a decree of the chancery court of Arkansas, not a foreign country. In *In re Marriage of DeLeon*, 804 S.W.2d 801, 804 (Mo.Ct.

App.1991), the parties who had obtained a divorce in the Dominican Republic were citizens of that country, were married there, were living there at the time of their separation, and owned substantial real and personal property located there. In *Rabbani v. Rabbani*, 178 A.D.2d 637, 637, 578 N.Y.S.2d 213 (1991), plaintiff wife did not challenge the validity of the judgment of divorce. In *Gonzalez v. Beraha*, 449 F.Supp. 1011, 1012–13 (D.C.Z.1978) (internal quotation marks and citation omitted), the United State District Court for the District of the Canal Zone recognized a Panamanian divorce not only pursuant to the principle of comity, but based on federal law concerning the Canal Zone, which required the district court to recognize the judgment of a foreign country's courts and give such judgments "the same effect as final judgments rendered in the Canal Zone."

*Hyde v. Hyde*, 562 S.W.2d 194 (Tenn.1978), is arguably applicable to the facts in this case. There, the Tennessee Supreme Court upheld the validity of a Dominican divorce decree issued to Memphis residents. *Id.* at 195 & 197. However, the greater weight of authority nationwide supports the notion that courts generally should not extend comity to a divorce decree issued by a court in a foreign country where neither party to the divorce was a domiciliary of that country.

be accorded under the doctrines of estoppel, laches, unclean hands, or like equitable principle, upon a proper evidentiary showing of reliance, undue delay, improper motivation, or similar conduct.

Annot., 13 A.L.R.3d at 1424.

In *Bruneau*, 489 A.2d at 1052 (brackets in original omitted), the Appellate Court of Connecticut stated:

The concept of "practical" recognition of a divorce decree rendered in a foreign nation where neither spouse is domiciled has been recognized by a number of courts. *See, e.g., Mayer v. Mayer*, 66 N.C.App. 522, 311 S.E.2d 659 (1984); *see also* [A]nnot., 13 A.L.R.3d 1419, § 8(a) and cases cited therein. "Practical recognition may be accorded such decrees by estoppel, laches, unclean hands, or similar equitable doctrine under which the party attacking the decree may be effectively barred from securing a judgment of invalidity." Annot., 13 A.L.R.3d 1419, 1452. Thus, a party may be precluded from attacking a foreign divorce decree if such an attack would be inequitable under the circumstances. *Scherer v. Scherer*, 405 N.E.2d 40, 44 (Ind. Ct.App.1980). Moreover, in a case involving a Mexican divorce, our Supreme Court has recently recognized that "out-of-state divorces are now both less likely and less opprobrious," and that, therefore, such divorces should not lightly be overturned where "the parties had intended to channel the dissolution of their marriage in a legitimate rather than in an illegitimate fashion." *Hayes v. Beresford*, 184 Conn. 558, 567, 440 A.2d 224 (1981); *see also Lavigne v. Lavigne*, 3 Conn.App. 423, 488 A.2d 1290 (1985).

■ Hawai'i recognizes the theory of quasi-estoppel, which is "a species of equitable estoppel which has its basis in election, waiver, acquiescence, or even acceptance of benefits and which precludes a party from asserting to another's disadvantage, a right inconsistent with a position previously taken by [the party]." *Anderson v. Anderson*, 59 Haw. 575, 589, 585 P.2d 938, 947 (1978) (internal quotation marks and citation omitted); *see Aehegma v. Aehegma*, 8 Haw.App. 215, 224, 797 P.2d 74, 80 (1990) (similarly defining quasi-estoppel); *see also Hartmann v. Bertelmann*, 39 Haw. 619, 626–31 (Haw. Terr.1952) (holding that beneficiaries of testamentary trust were estopped from claiming damages to trust allegedly caused by trustee's failure to sell certain real property within reasonable time as provided for by will of testator, where beneficiaries had contributed to delay in sale of real property by their insistence that property be sold for price in excess of price recommended by trustee and prices offered by potential purchasers).

In the instant case, the family court held the following in COL 39:

39. [Geraldine] is estopped from asserting that [her] marriage to Dubie is void based on the principle of estoppel and unclean hands. *Mayer v. Mayer*, [66 N.C.App. 522] 311 S.E.2d 659 (N.C.Ct.App. 1984); *De Marco v. De Marco*, [73 A.D.2d 28] 426 N.Y.S.2d 127 (N.Y.3d Dep't 1980); *Taylor v. Taylor*, S.E.2d [sic] 542, 546 (1987); *Chilcott v. Chilcott*, 257 Cal.App.2d 868 [65 Cal.Rptr. 263] (Cal.[App.]1968); *Bruguiere v. Bruguiere*, [172 Cal. 199] 155 P. 988 (Cal.[1916] ).

### a. Geraldine's arguments

Geraldine argues COL 39 is wrong because it is based on various clearly erroneous FOFs. She maintains that the principle of quasi-estoppel "is completely inapplicable to [her], who didn't even meet Dubie until a year after the bogus Dominican divorce, who didn't know it was bogus, and whose hands, unlike Dubie's [and Sylvie's], are clean."

### (i) FOFs 11 through 16 and 25

FOFs 11 through 16 and 25 provide:

11. From February 2, 1995 until present, Sylvie relied upon the validity of the [Dominican] Decree entered by the [Dominican court].

12. Ever since the [Dominican] Decree was entered, Sylvie has held herself out as being divorced from Dubie.

13. Prior to [Geraldine's] [Motion for Post–Decree Relief], at no time did anyone ever question the validity of the [Dominican] Decree.

14. Sylvie did not question the validity of the [Dominican] Decree because when purchasing a home in 1995, Sylvie successfully proved the validity of the [Dominican] Decree to an attorney in the province of Quebec, Canada.

15. In reliance on the [Dominican] Decree, Sylvie and Dubie's daughter, Felicia ("Felicia"), had her last name changed to "Dubie" so that she would be able to live with her father.

16. In 1995, the U.S. Embassy certified and recognized the [Dominican] Decree by acknowledging the Dominican Republic divorce procedures.

. . . .

25. Based on Sylvie's meetings with Dubie and [Geraldine], Sylvie had an opportunity to observe Dubie and [Geraldine's] relationship. Dubie relied upon the validity of the [Dominican] Decree and held himself out as being divorced. Sylvie also observed that after Dubie and [Geraldine] were married, they acted like a married couple, lived together and introduced each other as husband and wife.

(Record references omitted.)

■ Geraldine maintains that FOFs 11 through 16 are clearly erroneous because they are based on insubstantial evidence and because Sylvie knew the Dominican Decree was a sham, as evidenced by a Variation of Separation Agreement (Separation Agreement), which Sylvie and Dubie executed under oath on September 20, 1996 and filed on October 23, 1996 in the Supreme Court of British Columbia, Canada, and in which Sylvie swore that she was still Dubie's wife. Geraldine adds that she did not "even meet Dubie until a year after the sham divorce."

Geraldine attached the Separation Agreement, with the "October 23, 1996, Victoria Registry" stamp on it, to her Motion for Post–Decree Relief. The Separation Agreement refers to Sylvie and Dubie as husband and wife. FOFs 11 through 16 are based on Sylvie's declaration, which Nancy attached to her memorandum in opposition to the Motion for Post–Decree Relief, and these findings are all supported by statements made in Sylvie's declaration.

"[I]t is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the trier of fact." *Inoue,* 118 Hawai'i at 101, 185 P.3d at 849 (internal quotation marks and citation omitted). We decline to review the family court's determination that Sylvie's declaration carried more weight than the Separation Agreement.

■ Geraldine maintains FOF 25 is clearly erroneous because "Dubie didn't rely upon the validity of the Dominican [D]ecree, except to fool [Geraldine] into thinking he was her husband, establishing a relationship that allowed him to gain her trust and steal her money." The findings in FOF 25 are supported by the statements in Sylvie's declaration. Again, we decline to pass upon the family court's weight-of-the-evidence determination. *Inoue,* 118 Hawai'i at 101, 185 P.3d at 849.

### (ii) FOFs 19 and 23

■ Geraldine contends FOFs 19 and 23 are clearly erroneous. FOF 19 provides that "[w]ith full knowledge of the [Dominican] Decree, on or about April 30, 1996, [Geraldine] completed and submitted a Marriage License Application to the Department of Health for the State of Hawai'i." FOF 23 provides that "[a]t the time of the marriage ceremony, [Geraldine] had knowledge, or at least, had constructive knowledge of the [Dominican] Decree and that it was obtained in the Dominican Republic."

Geraldine argues that she did not have "full knowledge" of the Dominican Decree because she did not know that it was an absolute nullity and, therefore, her own marriage to and divorce from Dubie were void. She cites to *Yuen Shee v. London Guarantee & Accident Co.,* 40 Haw. 213, 229–30 (Haw. Terr.1953), and *Anderson* to support this argument. In *Yuen Shee,* the Hawai'i Supreme Court stated that quasi-estoppel is "based upon the broad equitable principle which courts recognize, that a person, with full knowledge of the facts, shall not be permitted to act in a manner inconsistent with his former position or conduct to the injury of another." 40 Haw. at 230. In *Anderson,*

the Hawai'i Supreme Court held that within the context of estoppel, "[b]efore one may be charged with knowledge it must appear that he possesses full knowledge of all the material particulars and circumstances and was fully apprised of the effect of the acts ratified and of his legal rights in the matter." 59 Haw. at 589, 585 P.2d at 946 (internal quotation marks, citation, and parentheses omitted).

FOF 20, which Geraldine does not contest, provides that "[t]he application for marriage license indicated that Dubie's marriage to Sylvie ended in divorce in 1995 in the Dominican Republic, Caribbean." There is no evidence in the record on appeal that Geraldine thought Dubie or Sylvie was a domiciliary of the Dominican Republic at the time of the Dominican divorce. Hence, Geraldine had "full knowledge" of the relevant facts at the time she married Dubie sufficient to warrant the family court's application of the quasi-estoppel principle. FOFs 19 and 23 are not clearly erroneous.

### (iii) Points regarding other FOFs

Geraldine contends the portion of FOF 22 stating that she and Dubie "participated in a ceremonial marriage," the portion of FOF 23 referring to that "marriage ceremony," and the portion of FOF 27 stating that the family court granted Geraldine's petition for divorce from Dubie are clearly erroneous. Because we hold Geraldine was estopped from asserting that the divorce was void, see Part III. A.2.b, we need not address these points.

### b. Quasi-estoppel applies

In *Mayer*, Doris Mayer (Doris) sued for divorce from her purported husband, Victor Mayer (Victor), (Doris and Victor collectively, the Mayers). 311 S.E.2d at 662. Victor counter-claimed for an annulment and asserted that he and Doris were not married because at the time of their purported marriage, Doris was already married to Fred Crumpler (Fred). *Id.* Victor asserted that Doris and Fred had attempted to divorce by obtaining a divorce decree from a Dominican court, but the decree was void and in contravention of the laws of North Carolina. *Id.* Victor claimed Doris knew the decree was void because she had been so advised by counsel. *Id.*

The trial court denied relief to Doris, finding the Dominican divorce was invalid and the Mayers' marriage was void. *Id.* Doris appealed to the Court of Appeals of North Carolina, arguing that her Dominican divorce from Fred was valid. *Id.* In the alternative, she argued that even if the court of appeals found the Dominican divorce invalid, Victor should

> nevertheless, be estopped from questioning its validity since (a) he participated in her procurement of the invalid divorce; (b) all parties relied upon the divorce's validity until [Victor] abandoned [Doris]; and (c) a contrary result would create a marriage at will by [Victor], who could end the marital relationship at any time he desired, and yet prevent [Doris] from avoiding the obligations of her remarriage.

*Id.* at 665–66.

The court of appeals held that based on the theory of quasi-estoppel, it would be more inimical to North Carolina law and policy to permit Victor to avoid his marital obligations by acting inconsistently with his prior conduct:

> As much as in any area of the law, quasi estoppel cases turn on the particular facts of each case. The facts in this case compel the conclusion we reach. The record suggests that [Victor] insisted on [Doris's] obtaining a Dominican divorce; that he promised to support her in a manner better than the one she had been accustomed to prompting [Doris] to sign away any alimony she may have been entitled to from [Fred]; and that he accompanied her on her trip to the Dominican Republic, paying for her transportation and lodging, and other personal expenses. After the divorce, [Victor] continued to uphold its validity as he had [Doris] sign a prenuptial agreement and he married her. While they were married, [Victor] lived in [Doris's] house and borrowed money from her, including $25,000 which he admits he has not repaid. [Victor] never questioned the validity of the marriage until he abandoned [Doris]. In addition, [Doris] relied on the divorce's validity.

Failure to estop [Victor] in this case would result in matrimonial uncertainty because ... it creates the impossible situation of a wife or a husband "at will" where the divorced party who remarried cannot avoid the obligation of his remarriage, while the second spouse could at any time get an annulment.

*Id.* at 668 (internal quotation marks, citation, and brackets in original omitted).

*Scherer v. Scherer,* 405 N.E.2d 40 (Ind.Ct. App.1980), involved the following background facts:

Marital difficulties arose shortly after the parties were married in January 1970, and the husband [Howard J. Scherer (Howard)] frequently stated he desired a divorce. In the fall of 1976 [Howard] contacted an attorney, Howard S. Grimm [(Grimm)], with whom he had prior business dealings, regarding the possibility of Grimm representing him in a divorce proceeding. In the latter part of October 1976 the parties [Howard and his wife, Carol L. Scherer (Carol), (collectively, the Scherers)] met with [Grimm], pursuant to prearrangement by [Howard], and [Howard] agreed to obtain a Mexican divorce at the end of the current school year to avoid the notoriety of a local divorce. The [Scherers] discussed and indicated they were amenable to a separation agreement for the purpose of settling the matters of property, custody, support, and visitation. [Howard] moved out of the parties' residence in Woodburn, Indiana, that evening. On December 31, 1976 the [Scherers] and [Grimm] met at [Howard's] residence in Fort Wayne and both signed a separation agreement which [Grimm] had drafted. Under this agreement, [Carol] was to receive the Woodburn, Indiana residence which included 12.431 acres of land. She was also to receive certain personal property upon the payment of $37,000.00. [Howard] was to become the absolute owner of the business known as Scherer Industrial Waste Company, Inc., and all the items of personal property therein. He was also to become the sole owner of all common stock and certain antique furnishings. [Howard] agreed to pay child support of $55.00 per week for one child, the custody of whom was to be awarded to [Carol]. [Howard] executed the necessary quit claim deed and real estate mortgage which had been prepared pursuant to the agreement. In addition he executed a special power of attorney obtained for use in divorce proceedings in the Dominican Republic.

On January 14, 1977 [Carol] notified [Howard] she had made arrangements to travel to the Dominican Republic that day for the purpose of obtaining a divorce. During the conversation the [Scherers] learned they would be traveling on the same plane because [Howard] had made plans to go to Florida. Later that day the [Scherers] boarded the flight for Cleveland and sat together, during which time [Howard] commented on how glad he was the marriage was over. In Cleveland they had a drink together before [Carol] continued to the Dominican Republic and [Howard] to Florida. On January 17, 1977, [Carol] appeared before the Dominican Republic Court in person and [Howard] appeared through counsel and a final divorce decree was rendered. In the Dominican Republic decree it is stated that the parties expressly submitted to the jurisdiction of the court, and that [Howard] appeared before the Court by his attorney. The decree also recited that both [Howard] and [Carol] were domiciliaries of Indiana. The basis of the foreign decree as set forth therein, was "incompatibility of temperaments." The decree further expressly provided that the separation agreement executed by the [Scherers] on December 31, 1976 in Indiana, which was presented to the Dominican Republic Court and merged into the divorce decree, was not affected nor modified by the judgment and would survive in the form established by the laws of the place where the separation agreement was signed. [Carol] returned to Indiana the same day. [Howard] a few days later called her to see if [they] were in fact divorced, was told they were, and again expressed relief the marriage was over, stated he hoped they could continue to be friends. In the ensuing months [Howard] informed several people that he and [Car-

ol] were no longer married since they had obtained a divorce in the Dominican Republic. Moreover, both parties accepted the benefits of the separation agreement incorporated into the divorce decree, and [Carol] assumed custody of [their] child. [Howard] told [Carol] of his plans to remarry in July, and publicly accepted congratulations from friends. [Howard] also indicated to various people, however, that he wished he and [Carol] had not gone through with the divorce. [Carol] had married [Grimm] on March 30, 1977.

*Id.* at 45–46 (footnote omitted).

On July 12, 1977, in Allen County, Indiana, Howard filed a petition for dissolution of his marriage to Carol, praying for an equitable distribution of property acquired during the marriage. *Id.* at 42. Carol filed a motion for summary judgment, in which she claimed that the Dominican Republic divorce decree barred the Indiana proceeding. *Id.* The trial court granted Carol summary judgment, finding that the parties had obtained a valid bilateral divorce and Howard was estopped from denying its validity. *Id.* at 43. Howard appealed to the Court of Appeals of Indiana, *id.* at 42–43, arguing that the Dominican Republic divorce decree was invalid because neither he nor Carol was a domiciliary of the Dominican Republic at the time they obtained their purported divorce. *Id.* at 43. The appeals court held:

> Under the circumstances of this case, we believe the trial court was correct in its finding that [Howard] should be estopped from attacking the Dominican Republic decree. [Howard's] attack on the decree is inconsistent with his conduct before and after the foreign divorce. He initiated contact with an attorney for the purpose of possibly obtaining a divorce; he agreed to the parties obtaining a foreign divorce; he acquiesced in the procurement of the divorce by executing the pertinent documents; he considered himself divorced, expressed relief that the marriage was over, and stated his plans to remarry, and he waited six months to challenge the validity of the decree. Furthermore, action was taken in reliance on the divorce, including the wife's remarriage, in such a manner

that it would now be inequitable to permit the husband to challenge the decree.

*Id.* at 46.

In the instant case, Geraldine waited nearly eleven years from the time she married Dubie in 1996, with full knowledge of the Dominican Decree, to question the Dominican Decree's validity. Geraldine and Dubie's application for a marriage license—which Geraldine signed, swearing under oath that the information contained therein was true and correct to the best of her knowledge—indicated that Dubie's marriage to Sylvie ended in divorce in 1995 in the Dominican Republic. Geraldine met and spent time with Sylvie and Felicia after marrying Dubie. Under these facts, Geraldine accepted the benefits of the Dominican Divorce by enjoying her marriage to Dubie for roughly six and a half years prior to divorcing him in 2003. *Anderson,* 59 Haw. at 589, 585 P.2d at 947. Thus, her challenge to the validity of the Dominican Divorce is inconsistent with her previous position. *Id.*

Given the foregoing, we hold that based on FOFs 11 through 25, which are not clearly erroneous, see Parts III.A.2.a and III.C, the family court did not abuse its discretion in finding that Geraldine was estopped from challenging the validity of the Dominican Decree, and COL 39 is not wrong.

### B. Whether notice to Geraldine adequate

Geraldine contends the undisputed evidence showed that notice to her of the Dominican divorce was inadequate, a violation of the due process. Given our holding that the family court did not abuse its discretion in finding Geraldine was estopped from contesting the validity of the Dominican Decree, see Part III.A.2, we need not address this point.

### C. Whether Dominican Decree subject to collateral attack

Geraldine contends the Dominican Decree is subject to collateral attack because it is void *ab initio,* and COL 34 is wrong. Given our holding that Geraldine was estopped from attacking the validity of the Dominican Decree, we need not address this point.

**D. Whether Geraldine entitled to relief, hearing on undue influence, fraud claims**

In her Motion for Post–Decree Relief, Geraldine argued in the alternative that the family court should set aside the property division portion of the 11/28/03 Decree because Dubie exercised undue influence on her and fraud on the court. In COL 31, the family court held that "[Geraldine's] claims sound in fraud or other intentional misconduct, and therefore are time-barred pursuant to [HFCR Rule] 60(b)(3). [*Wehrle*] *v. Robison*, [92 N.M. 485] 590 P.2d 633 (N.M.1979); [HFCR Rule] 60(b)(3)." Geraldine maintains that COL 31 is wrong because HFCR Rule 60(b)(6), not HFCR Rule 60(b)(3), applies to her fraud and undue influence claims.

HFCR Rule 60(b) provides in relevant part:

> Rule 60. RELIEF FROM JUDGMENT OR ORDER
>
> . . . .
>
> (b) Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from any or all of the provisions of a final judgment, order, or proceeding for the following reasons: ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ... or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceedings was entered or taken.

In her Motion for Post–Decree Relief, Geraldine argued that "[n]either undue influence ... nor fraud on the court are specifically stated in HFCR Rule 60(b)(1)-(5)" and there-fore her claims fell under Rule 60(b)(6) and were not time-barred.

On appeal, Geraldine maintains that because she proved her case of undue influence and fraud on the family court, which Nancy failed to rebut, the court should have granted her relief, or at least an evidentiary hearing. She cites to *Hayashi v. Hayashi*, 4 Haw.App. 286, 290, 666 P.2d 171, 174 (1983),[6] to support this argument.

In her Motion for Post–Decree Relief, Geraldine argued the following: (1) Dubie had "used deception and exercised undue influence to achieve a grossly inequitable division" of property in their divorce; (2) "from the beginning of their relationship" Dubie had "intentionally made factual misrepresentations to her regarding his financial worth, his business activities, his past, his character, his children, and his marital status"; (3) on information and belief, Dubie knew that he had not been validly divorced from Sylvie at the time he purportedly married Geraldine; and (4) had Geraldine known about Dubie's misrepresentations to her, she would not have married him. She also argued that Dubie had committed fraud on the court "by concealing the fact that he had never divorced [Sylvie], thereby claiming a status and identity (*i.e.*, a married man) to gain access to this court so he could use it as a device to improperly obtain [Geraldine's] assets."

HFCR Rule 60(b)(3) applies in this case. It provides:

> "(b) Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from any or all of the provisions of a final judgment, order, or proceeding for the following reasons: ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party[.]"

---

**6.** In *Hayashi*, 4 Haw.App. at 290, 666 P.2d at 174, this court stated:

> [HFCR] Rule 60(b)(6) permits the trial court in its sound discretion to relieve a party from a final judgment. *Isemoto Contracting Co. v. Andrade*, 1 Haw.App. 202, 616 P.2d 1022 (1980). Such relief is extraordinary and the movant must show that (1) the motion is based on some reason other than those specifically stated in clauses 60(b)(1) through (5); (2) the reason urged is such as to justify the relief; and (3) the motion is made within a reasonable time. 7 Moore's Federal Practice ¶ 60.27[1] (2d ed. 1982).

The rule does not specify upon whom the adverse party must have committed the fraud, misrepresentation, or other misconduct. Therefore, although Geraldine characterizes Dubie's alleged fraud as "fraud on the court," that fraud claim nevertheless still falls under HFCR Rule 60(b)(3). Further, a plain reading of HFCR Rule 60(b) reveals that "undue influence" falls within Rule 60(b)(3) as "other misconduct."

Geraldine filed her Motion for Post–Decree Relief on June 28, 2007—more than one year after the 11/28/03 Decree was entered. According to HFCR Rule 60(b), her fraud and undue influence claims were untimely, and the family court did not abuse its discretion by failing to provide Geraldine relief or a hearing regarding them. *See Child Support Enforcement Agency v. Doe,* 98 Hawai'i 499, 503, 51 P.3d 366, 370 (2002) ("The timeliness of a motion brought pursuant to HFCR Rule 60(b) implicates the jurisdiction of the family court."). COL 31 is not wrong.

Geraldine argues that COLs 40 and 41 are wrong because "the property settlements were unfair, inequitable, against public policy and were procured through undue influence and fraud on the Court." She maintains that COL 44 is wrong because her claims of undue influence and fraud on the court were timely pursuant to HFCR Rule 60(b)(6). Given our holding that Geraldine's alternative argument in her Motion for Post–Decree Relief was untimely, we need not address these points.

### E. Remaining FOFs and COLs

In her points of error, Geraldine contends that portions of FOFs 6, 7, 8, 10, 17, and 28 are clearly erroneous and COLs 30, 32, 36, 37, 38, 40, 41, 42, 43, and 44 are wrong.

■ Geraldine argues that the following FOFs or portions of FOFs are clearly erroneous: the portion of FOF 6 stating that the Dominican Decree was granted on February 7, 1995 because it was actually granted on February 2, 1995; FOF 10, because it states that the time period within which to appeal the Dominican Decree elapsed on April 7, 1995, instead of the correct date of April 2, 1995; FOF 7, because the Dominican Decree was not mailed to Dubie, but was "served by the court bailiff of the 3rd Civil Chambers serving the notice on Maria Luisa de la Paz, secretary of the District Attorney for the Judicial District of Santo Domingo, Dominican Republic"; FOF 17, because no evidence was presented that Geraldine was the co-founder of Herbalife and it was irrelevant, even if true; and FOF 28, because it is based on insubstantial evidence and "purports to divine [Geraldine's] motive as related to [Sylvie] by Dubie." Even if Geraldine's contentions are true, we fail to see how any such errors prejudiced her and hold that they were harmless. *See* HRE Rule 103(a) (Supp. 2009).

■ Geraldine argues that COL 32 is "correct as to review of the ruling on the [HFCR Rule] 60(b)(4) motion, as to which the standard is right/wrong and the review *de novo.* As to review of the denial of relief under [HFCR Rule] 60(b)(6), the standard is abuse of discretion." COL 32 provides: "Determining whether a judgment should be set aside pursuant to Rule 60(b) of the [HFCR] is not a matter of discretion. *In re Hana Ranch, Co.,* 3 Haw.App. 141, 146, 642 P.2d 938, 941 (1982)." In *Hana Ranch,* this court actually held that courts apply different standards of review to motions brought under subsections (b)(4) and (b)(6) of HFCR Rule 60. Referring to HFCR Rule 60(b)(4), we stated that "[t]he determination of whether a judgment is void is not a discretionary issue." *Hana Ranch,* 3 Haw.App. at 146, 642 P.2d at 941. With regard to HFCR Rule 60(b)(6), we stated that it "empowers the court in its discretion to vacate a judgment whenever that action is appropriate to accomplish justice." *Hana Ranch,* 3 Haw.App. at 147, 642 P.2d at 942. Therefore, COL 32 is *wrong.* Nevertheless, because HFCR Rule 60(b)(6) is inapplicable to this case, as we have held, the court's error was harmless. *See* HRE Rule 103(a).

■ Geraldine argues that that COL 42 is wrong because her motion to vacate or set aside the property division portion of the 11/28/03 Decree was not a creditor's claim, only the family court had the power to grant the motion, and the probate court does not have subject matter jurisdiction to vacate the

11/28/03 Decree. She adds that in its FOFs/ COLs Re Motion for Post–Decree Relief, the family court misdated the 11/28/03 Decree as the "November 23, 2003 Divorce Decree." Given our holding that Geraldine's fraud and undue influence claims were untimely, see Part III.B, we need not address her first three points. With regard to the family court's allegedly misdating the decree, throughout the FOFs/COLs Re Motion for Post–Decree Relief the court mischaracterizes the divorce decree dissolving the marriage between Dubie and Geraldine as the "November 23, 2003 Divorce Decree" when the decree was actually filed on November 28, 2003; however, we fail to see how any such error may have prejudiced Geraldine and hold that it was harmless. See HRE Rule 103(a).

Geraldine argues the following FOFs are erroneous and COLs are wrong: FOFs 6 and 8, because the Dominican Decree did not terminate the Dominican divorce since the decree was void *ab initio;* COL 30, because although the family court had "subject matter jurisdiction and personal jurisdiction to grant relief under Rule 60(b), HFCR," the court "did not have subject matter jurisdiction to grant the decree or to award or divide property"; COL 36, because "[t]he uncontroverted facts establish as a matter of law that [Geraldine] was never married to Dubie"; COL 37, because it misstates the doctrine and law of impediment; COL 38, because she did not ask the family court to set aside the Dominican Decree and *res judicata* did not apply; COLs 40 and 41, because "[t]he four property settlements incorporated in the decree lost their independent existence as contracts" since "[t]he decree incorporating them is void *ab initio*"; and COL 43, because it is irrelevant whether she and Dubie might be considered putative spouses. Given our holding that Geraldine is estopped from challenging the validity of the Dominican Decree, we need not address these points.

Geraldine argues that COL 44 is wrong. COL 44 provides: "[Geraldine's] claims to set aside the [11/28/03 Decree] and the [11/28/03 Decree's] property division portion are based on fraud and are therefore barred by the one-year statute of limitations pursuant to

Rule 60(b)(3) of the [HFCR]." Geraldine argues that "her claim for relief under 60(b)(4) rests on voidness, not fraud" and her "60(b)(6) claims (undue influence, fraud on the court) were brought only months after discovery and were timely under 60(b)(6)." We agree that the portion of the COL stating that "[Geraldine's] claims to set aside the [11/28/03 Decree] and the [11/28/03 Decree's] property division portion are based on fraud and are therefore barred by the one-year statute of limitations pursuant to Rule 60(b)(3) of the [HFCR]" is too vague and, therefore, wrong. Geraldine's primary argument in her Motion for Post–Decree Relief— that the Dominican Decree was void ab initio—fell under HFCR Rule 60(b)(4). Her alternative argument, which fell under HFCR Rule 60(b)(3), was that the family court should set aside the property division portion of the 11/28/03 Decree because the divorce had been procured through undue influence and fraud on the court. However, given our holdings that the family court did not abuse its discretion by finding that Geraldine was estopped from contesting the validity of the Dominican Decree, see Part III.A.2, and that Geraldine's undue influence and fraud claims were time-barred, see Part III. D., this point is moot.

## IV.

The "Order Denying Plaintiff's Motion for Post–Decree Relief to Vacate Divorce Decree or Set Aside Property Division Pursuant to Hawaii Family Court Rule 60([b]), Filed June 28, 2007" filed on December 18, 2007 in the Family Court of the First Circuit is affirmed.